## COLBURN ET AL. *v.* THE STATE, EX REL. ARNOLD.

PRACTICE.—*Suit on Guardian's Bond.*—*Demurrer.*—In a suit upon a guardian's bond, where several breaches are assigned, on a demurrer to the whole complaint, if one or more of the breaches be good, the demurrer should be overruled.

SAME.—The sufficiency of breaches assigned in such case may be tested by a motion to strike out, or by a separate demurrer to each breach.

GUARDIAN.—*Bond.*—*Sale of Real Estate.*—*Proceeds.*—If real estate of wards is sold on the application of the guardian, he and his sureties are not liable on his original bond for the proceeds of such sale.

SAME.—If real estate of wards is sold on the application of some person other than the guardian, and the proceeds paid over to such guardian, he and his sureties are liable on his original bond for such proceeds.

GUARDIAN AND WARD.—*Suit on Bond.*—*Shares of Wards.*—In a suit on the relation of one ward, upon a guardian's bond, where there are two or more wards, each entitled to an equal share, if the relator has received a part of his share from a former guardian, the amount so received should be taken into account and the shares equalized.

SAME.—*Assessment of Damages.*—In assessing damages in a suit on a guardian's bond, the amount of principal and interest realized by the guardian should be ascertained. If the money has not been loaned or invested, the court should add such sum as could have been realized by loaning the same. Interest should be computed on the aggregate amount at the rate of six per cent. per annum, and to the sum thus ascertained ten per cent. should be added. In addition to the above, the court or jury should, in a proper case, exercise a sound legal discretion in assessing exemplary damages; and if such damages be allowed, the amount should be added to the aggregate amount, before the ten. per cent. is added.

From the Elkhart Common Pleas.

*O. H. Main, M. F. Shuey,* and *J. M. Vanfleet,* for appellants.

*W. C. Wilson* and *J. D. Osborn,* for appellee.

BUSKIRK, J.—This was an action upon the bond of Colburn, as guardian of the relator and two other minor children of Joseph M. Arnold, deceased.

There was issue, trial by the court, a special finding of facts. and conclusions of law, motion for a new trial, and judgment. on the finding. Proper exceptions were taken.

Three errors are assigned :

1. In overruling demurrer to complaint.
2. In conclusions of law.
3. In overruling motion for a new trial.

The objection urged to the complaint is, that there is no valid assignment of the breaches of the condition of the bond. There are eight breaches of the bond assigned. The demurrer was to the whole complaint.

The fifth and eighth assignments are unquestionably good. The demurrer being to the whole complaint, it was properly overruled. The appellants might have tested the sufficiency of the other assignments by a motion to strike out, or they might have demurred separately to each breach of the bond.

The demurrer to the complaint was correctly overruled. We do not deem it necessary to set out in this opinion the special finding of facts and conclusions of law thereon, as the questions relied upon for a reversal of the judgment can be stated.

The bond in suit was given by the guardian upon his appointment, as required by section 4 of " an act touching the relation of guardian and ward," approved June 9th, 1852. 2 G. & H. 563. It was not an additional bond as required by sec. 18 of said act. 2 G. & H. 571.

The court found that Colburn, as such guardian, had sold real estate situated in the State of Illinois, and had in his report charged himself with the sum of six hundred dollars as the proceeds of such sale. The court found, as a conclusion of law, " that the defendants are liable on their bond for the six hundred dollars mentioned in said report as derived from the sale of real estate in Illinois, and interest thereon, as well as the other sums mentioned in said report."

The question is, therefore, squarely presented whether the sureties upon the bond in suit are liable for the proceeds of the sale of the land in the State of Illinois.

It was held by this court in *Warwick* v. *The State*, 5 Ind. 350, that under the revised statutes of 1838, the sureties upon the original bond of a guardian were not liable for money

received by such guardian from the sale of real estate. The court say:

"As to the sum derived from the sale of the ward's real estate, it is plain, from the provisions of the R. S. of 1838 on the subject (and they govern this case), that the original bond of a guardian is only designed to secure the faithful appropriation and investment of the personal estate, including the rents of real. Sections 51, 52, p. 193. Such is the property of which the guardian, by virtue of his office, as we have before remarked, has the right of control, and it is all that is in contemplation when the sureties enter into his official bond. Our statutes authorize guardians, in certain contingencies, by permission of the proper court, to sell real estate of their wards; but it expressly provides that this shall only be done upon the guardian's executing a bond, in double the appraised value of the real estate proposed to be sold, which bond is to be executed as a part of the proceedings on the application for the sale. This bond is entirely distinct from, and disconnected with, the guardian's original bond. It is not treated as additional to it, to make up its sufficiency. No matter how ample and satisfactory the original bond may be as a security, the sale can not be permitted upon it, but only upon a new and independent obligation. This fact distinguishes the case of a guardian, under the statutes of 1838, from that of an administrator under those statutes, touching the sale of real estate, and furnishes the reason for a different decision in this suit from that made in *Salyer* v. *The State, ante,* p. 202."

It was held by this court in *Salyer* v. *The State,* 5 Ind. 202, and *Salyers* v. *Ross,* 15 Ind. 130, under the statute of 1831, that the bond required for the sale of real estate by an administrator did not create a primary security, but was merely subsidiary to the original bond given by the administrator.

In *Worgang's Adm'r* v. *Clipp,* 21 Ind. 119, which was an action upon the original bond of an administrator, and in which a recovery was sought for money derived from the sale

of real estate, it was held that the sureties upon the original bond were not liable for money derived from the sale of real estate, and that the sureties in the several bonds were liable only for the respective funds they are executed to secure.

In *The State, ex rel. Mount,* v. *Steele,* 21 Ind. 207, which was an action upon a guardian's bond given under sec. 18 to secure the money derived from the sale of real estate, it was held, that such a bond was not merely subsidiary to the original bond given by the guardian, but was an independent undertaking, and could only be discharged by the actual payment of the moneys arising from the sale of the real estate, according to law, to the ward or other person entitled to receive the same, and that suit might be instituted upon such bond whenever it was broken, without first resorting to the original bond. The ruling in the above case was distinguished from that in *Salyer* v. *The State,* and *Salyers* v. *Ross, supra,* by showing that the statute of 1852 was quite different from that of 1831, upon which such rulings were based.

In *Potter* v. *The State, ex rel. Thompson,* 23 Ind. 607, it was held that on a bond given by a guardian under the statute of 1843, he and his sureties were liable for all personal estate or moneys of the ward that may have come into the guardian's hands, except such as may have been received from the sale of the ward's real estate, made on the application or petition of the guardian; but it was further held that if in a proceeding for partition the real estate of the ward was sold by a commissioner, under the order of the court, and the money derived therefrom was paid over to the guardian, he and his sureties would be liable therefor as money belonging to the ward.

In *Reno* v. *Tyson,* 24 Ind. 56, it was held that the surety on the original bond of an executor is not liable for a misappropriation of money received from the sale of real estate, unless such sale was directed by the will.

It does not appear from the record by what authority, or by whom, the real estate in the State of Illinois was sold. If it was sold upon the application of Colburn as guardian,

it would seem from the foreging authorities, that he and his sureties would not be liable upon the original bond. If, on the other hand, such real estate was sold upon the application of some other person, who paid the proceeds of such sale over to the guardian in this State, who charged himself in his report therewith, then he and his sureties would be liable on the bond for so much money received.

The statute of Illinois, regulating the sale of lands situated therein by a foreign guardian, was not pleaded and put in the record. We are, therefore, unable to say whether the guardian executed an additional bond, or whether the sale was ordered upon the original bond executed in this State. In the condition of the record, it is impossible for us to determine whether the sureties are liable for the proceeds of the sale of the lands situated in the State of Illinois, but as the judgment will have to be reversed upon another ground, the pleadings can be amended, and the real facts shown upon another trial.

The court found that Colburn, after deducting certain credits, was chargeable with sixteen hundred and sixty dollars and ninety-eight cents of principal, and four hundred and ten dollars and eighty-four cents of interest, making two thousand and seventy-one dollars and eighty-two cents; that the relator was entitled to receive one-third of such sum, being six hundred and ninety dollars and sixty cents, less twenty-six dollars, being one-third of certain expenses, with interest at ten per cent. for six years and one month, being four hundred and ten dollars and eleven cents, amounting in all to ten hundred and eighty-four dollars and seventy-one cents, for which sum judgment was rendered.

It further appears from the record that Asa Howe was the first guardian of the relator and his two sisters; that such guardian paid out of the assets belonging to such minors, for the support and education of the relator and his sister Harriet, the sum of eight hundred dollars, and that the youngest child, Mary, had not received anything from the moneys in the hands of her said guardian.

It thus appears that the court below, in determining the amount which the relator was entitled to recover, did not take into consideration the amount which he had received from his former guardian. This was neither just, equitable, nor according to law. The relator was only entitled to one-third of the entire estate. The three children were entitled to share and share alike.

The court should have deducted the amount which the relator had received from his former guardian, and thus equalized the shares of the three children.

It appears from the record that the guardian loaned the money belonging to his wards at ten per cent. interest per annum, and that in his settlement with the court he accounted for interest at such rate. It also appears that the court below, in determining the liability of the appellant, computed interest from the time of such settlement, upon the amount so found due, at the rate of ten per cent., down to the rendition of the judgment.

It is a well settled principle of law, that a guardian has no right to make a profit to himself out of the estate of his wards, and that he is required to account for all increase, whether it is derived in the shape of interest or profits resulting from trades or investments of such estate. It was, therefore, proper for the court to charge the guardian, in his settlement, with whatever interest he had received or profit he had realized. But we do not think the court below adopted the true measure of damages in the action on the bond. The thirteenth section of the act "touching the relation of guardian and ward," 2 G. & H. 568, provides that any bond given by any guardian may be put in suit by any person entitled to the estate; and such suit shall be governed by the law regulating suits on the bonds of executors and administrators.

Turning, then, to the act touching the settlement of decedents' estates, we find that sec. 162, 2 G. & H. 529, provides for what causes an action may be maintained upon the bond of an executor or administrator; and that section 163, 2 G. &

H. 531, after providing for the manner of bringing such suit, enacts, that "the measure of damages in all such suits, shall be the value of the property converted, destroyed, embezzled or concealed, the injury sustained by the estate, or any person interested therein, interest on money retained, such exemplary damages as the court or jury trying the case may be willing to give, and ten per centum on the whole amount assessed."

The court below should have, in the first place, ascertained the amount of the principal with which the guardian was chargeable. To this should have been added whatever increase had resulted from loans or investments of such estate. If the money had not been loaned or invested, then the court should have added such sum as could have been realized by loaning the same. Upon the aggregate amount, interest should have been computed at six per cent., as that is the legal rate of interest in this State in the absence of an agreement in writing to pay a higher rate, not, however, exceeding ten per cent. *Yancy* v. *Teter*, 39 Ind. 305. To the sum thus ascertained, ten per cent. should have been added.

These items are imperatively required by the statute to be taken into consideration in fixing the amount of the recovery in an action upon the bond of a guardian, executor, or administrator.

In addition to these sums, the court or jury is invested with the discretionary power to assess exemplary damages. The statute does not impose a limit upon the discretion conferred, but we think it should be construed to mean a sound legal discretion, to be exercised in a proper case, to be governed by the facts and circumstances attending each case. If exemplary damages are assessed, the amount should be added to the aggregate amount before the ten per cent. is added, as that is to be added to the whole amount assessed. The course indicated was not pursued in the present case.

The judgment is reversed, with costs; and the cause is remanded, for a new trial in accordance with this opinion.