## HUNT ET AL. *v.* THE STATE, EX REL. MARTIN ET UX.

PRINCIPAL AND SURETY.—*Guardian's Bond.*—In an action on a guardian's bond, it is not a sufficient defence for a surety, that he signed the bond on the express condition that the principal obligor, before delivering it to the clerk, would have it signed by one or more other good, solvent men, as sureties with him, which was not done.

SAME.—*Fraud.—Pleading.*—In such an action, an answer by a sole surety is insufficient, which alleges that the bond was obtained from him by the principal obligor by fraud, covin and misrepresentation, by his stating that it should not be delivered to the clerk or to the judge, until it was executed by one or two other good, solvent persons as sureties.

GUARDIAN'S BOND.—*Extent of Liability Thereunder.*—The bond of a guardian, conditioned for the faithful discharge of his duties as guardian of the person and property of a person therein named and designated as the minor heir of a deceased person named, covers moneys of said ward's estate received by said guardian from other sources, as well as those received from the estate of said decedent; and the recovery in an action on such bond cannot be limited to the value of the estate mentioned in the statement made on the application for the appointment of the guardian, but may extend to the value of the whole estate of the

ward, then held or afterward acquired, not exceeding the amount of the penalty of the bond, except proceeds of the sale of the ward's real estate by order of court.

From the Hendricks Circuit Court.

*C. C. Nave,* for appellants.

*L. M. Campbell,* for appellees.

Downey, J.—This was an action by the State, on the relation of John V. Martin and Rebecca J. Martin, his wife. It was founded on the bond of Hunt, as the guardian of the female relatrix, and of Milo H. Moon, as his surety. The bond is in the usual form of such bonds given by guardians on their appointment, and was in a penalty of two thousand dollars. It was conditioned as follows:

"If the above bound Cyrus Hunt will faithfully discharge his duties as guardian of the person and property of William Hussey, Jesse Hussey, John Hussey, Lydia Hussey, Rebecca J. Hussey and Jediah C. Hussey, minor heirs of Thomas Hussey, deceased, then the above obligation is to be void, else to remain in full force."

It is alleged that the guardian settled and reported in full as to all his wards except the relatrix, and was discharged; that on the 11th day of June, 1872, he reported to the common pleas court, acknowledging that there was in his hands, due said relatrix, twenty-four hundred and twenty-two dollars and seventy-five cents; that since that time he has received from the First National Bank of Danville fifteen hundred dollars, and for rents of land five hundred dollars; the whole amounting to five thousand dollars; that he has converted the same to his own use; that although cited by the court and ordered to report further concerning the same and to pay the money into court, and although often requested to pay the same, he has wholly failed and refused to pay or account for the same, and has been removed from his trust as such guardian, by order of the court, and has converted to his own use all the money in his hands belonging to said ward. It is further alleged

that said relatrix has intermarried with her co-relator, John V. Martin, a man of full age; wherefore, etc.

The defendant Hunt answered separately in four paragraphs, and Moon answered separately in six paragraphs. The defendants also answered jointly in one paragraph of set-off. A demurrer of the plaintiff to the third paragraph of the answer of Hunt, and to the first, second and third paragraphs of the answer of Moon was sustained by the court. Reply in denial. Trial by jury, and a general verdict for the plaintiff, for two thousand dollars, and answers to certain interrogatories propounded at the instance of the plaintiff. Motion by Moon for judgment in his favor on the special finding overruled. Motion by the defendants for a new trial and in arrest of judgment overruled, and judgment on the general verdict.

The errors properly assigned are:

1. Sustaining the demurrers to the second, third and sixth paragraphs of the answer of Moon.

2. Sustaining the demurrer to the third paragraph of the answer of Hunt.

3. Overruling the motion of Moon for judgment in his favor on the special findings.

4. Overruling the motion of the defendants for a new trial.

5. Overruling the motion of the defendants in arrest of judgment.

The first paragraph of the answer of Moon avers, in substance, that he signed the bond on the express condition that Hunt would, before delivery of said bond to the clerk, have it signed by one or more other good, solvent men as sureties with him, which was not done; wherefore the said writing is not his deed. This paragraph is sworn to by Moon.

We think there was no error in sustaining the demurrer to this paragraph of the answer. The case comes within the rule laid down in *Deardorff* v. *Foresman*, 24 Ind. 481, and cases following it. See *The Wild Cat Branch* v. *Ball*, 45 Ind. 213.

The second paragraph of the answer of Moon alleges, in substance, that the bond was obtained by Hunt from him by fraud, covin and misrepresentation, by his stating that it should not be delivered to the clerk or to the judge of said court until it was executed or signed by one or two other good, solvent persons as sureties thereto. Wherefore, etc.

We think this paragraph is not good. There is no fraud properly alleged, and the doctrine of the cases already cited is applicable here.

In the sixth paragraph of the answer, it is alleged, that before the guardian was appointed, he filed in the office of the clerk a statement of the whole estate of the minors, and the probable value thereof, specifying the value of personal property and real estate separately, and the probable value of the annual rents and profits of the real estate, verified by affidavit, which amount was then and there fixed at five hundred dollars, the value of the personal property, and the rental value of the real estate at seventeen hundred dollars; and said Moon was thereafter called upon by said Hunt to sign his name as one of the sureties of him, said Hunt, to said bond, he, the said Hunt, then and there agreeing with him, said Moon, that he would also get one or two solvent men to sign their names to said bond as sureties thereto, before he would deliver the same to the clerk for approval; and relying on said promise, he signed the same, and upon no other or different understanding or agreement; but said Hunt, with the intention of cheating and defrauding him, presented said bond to the clerk for his approval, without the knowledge or consent of this defendant, and without getting any other person to sign the same, and the same was then and there approved by the clerk; that said Hunt, with the intention of cheating and defrauding him, etc., received a legacy of two thousand dollars from the estate of one Jediah Hussey, deceased, consisting of bank stock of the First National Bank of Danville, willed by said Jediah Hussey to said Rebecca J. Hussey, long after the signing of the name of him, said Moon, to said writing, and with the

intention aforesaid, afterwards, on the 15th day of June, 1872, reported to said court that he was then due the relatrix two thousand four hundred and twenty-two dollars and seventy-five cents, when, in fact, he was not then due her, of moneys by him received as her guardian from the estate of Thomas Hussey, deceased, one cent, he having before that time fully, for board, clothing and education, paid her all money, together with the interest accrued thereon, which was by him, her guardian, received from the estate of her deceased father, Thomas Hussey, and for which the said writing or bond was signed as aforesaid by him, the said Moon, and for no other or different purpose whatever, etc. Wherefore, etc.

So far as this paragraph relies upon the promise of Hunt to have the bond signed by other persons as sureties, before delivering it to the clerk, we need not remark upon it further than we have done in the consideration of the other paragraphs of the answer. Upon the other ground, we are of the opinion that the paragraph cannot be sustained. The bond of the guardian must be held to cover the money received from other sources, as well as from the estate of the father of the relatrix. The bond is not, by its terms, confined to moneys received from that source only. The fact that the wards are designated as "minor heirs of Thomas Hussey, deceased," cannot have that effect. Looking at sections four and five of the act relating to guardians, we conclude that the recovery on the bond cannot be limited to the value of the estate mentioned in the statement made on the application for appointment, but extends to the whole estate of the ward then held or afterwards acquired, except it may be the proceeds of the sale of real estate ordered to be sold by the court, in which case an additional bond is required. It is conceded that the liability of the surety cannot exceed the amount of the penalty of the bond. See *Colburn* v. *The State, ex rel., etc.,* 47 Ind. 310.

The third paragraph of the answer of Hunt relies upon the fact that he had paid all the money received by him

from the estate of the father of the relatrix. As this was not all the money of the ward alleged to have been received by the guardian, as we have seen, the paragraph was not a good bar to the action.

The other assignments of error do not present any additional question affecting the merits of the case.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.