27 P. 86 
1 Colo.App. 16
 COOPER v. DE MAINVILLE et al. 
Court of Appeals of Colorado
June 23, 1891

 
 Error
 to Lake county court.
 
 
 [1
 Colo.App. 17] J.E. Havens and Bennett & Bennett, for
 plaintiff in error.
 
 
 N.
 Rollins, for defendants in error.
 
 
 RICHMOND,
 P.J.
 
 
 This
 was an action upon an appeal-bond. On the 21st of March,
 1884, plaintiff in error obtained, before a justice of the
 peace for Lake county, a judgment against Sylvanus Ayres,
 Jr., for the sum of $226, from which judgment Ayres appealed
 to the county court, filing an appeal-bond. Subsequently the
 county court directed appellant to file another and
 sufficient appeal-bond, which was done. Said appeal-bond, so
 filed, was signed by Isaac Cooper and William A. Ellis as
 sureties. The original cause was tried in the county court,
 resulting in a judgment for defendants in error. After this,
 suit was instituted upon the bond, and service of summons
 made upon Isaac Cooper. To the complaint Cooper answered,
 alleging that the bond was not his, because, at the time of
 the execution and delivery of it to the principal, (Ayres,)
 Ayres promised and agreed that he would not deliver the bond
 until the signature of another person had been procured. To
 this answer a demurrer was interposed and sustained.
 Thereafter Isaac Cooper died, and the plaintiff in error,
 Sarah F. Cooper, as administratrix of the estate, appeared to
 defend the action, and elected to stand by the answer. Two
 errors are assigned: First, the error of the court in
 sustaining the demurrer and entering judgment; second, to the
 form of the judgment. [1 Colo.App. 18] The first question for
 consideration is whether, when a surety who signs and seals a
 bond, and then delivers it to the principal obligor, upon the
 condition that it shall not be delivered until it has been
 signed by another co-surety, and the principal delivers it in
 disregard of the condition, not making known the condition,
 there being no circumstances which should put the person
 receiving it on inquiry, does the instrument become operative
 as a legal deed. This question, we think must be answered in
 the affirmative. Conceding that every thing alleged in the
 answer is true,--that the understanding existed between Ayres
 and Cooper that another co-surety should be procured before
 the delivery of the bond, yet neither the obligee of the bond
 nor the clerk of the court to whom it was delivered had
 knowledge of such understanding or agreement. Besides, the
 bond was in all respects regularly executed, according to the
 prescribed form, and accepted by the officer whose duty it
 was to take it as a completed contract. There was nothing on
 the face of the paper, or in the instrument itself, to put
 the officer on inquiry, or to raise a suspicion in his mind
 that a condition was annexed to the delivery of the
 instrument. The transaction was one of ordinary occurrence in
 perfecting appeals from one court to another. No blank was
 left for the name of the additional co-surety, nor was the
 name embraced in the body of the bond; and, in addition to
 this, the record discloses the fact to be that the two
 sureties, Ellis and Cooper, appeared before the clerk of the
 court, and qualified as such sureties. At that time they knew
 the bond was in the hands of the clerk to be filed; they knew
 that the principal obligor, Ayres, had delivered it; and that
 upon their qualification it would be filed; and not until
 after the trial of the cause appealed from the justice's
 court, and the institution of suit on the bond does it appear
 that this agreement or understanding was made known. We admit
 that there is a conflict of authorities upon this
 proposition, yet, after a thorough review of those cited by
 the plaintiff in error, and such others as are referred to in
 [1 Colo.App. 19] the textbooks, we unhesitatingly declare
 that the better reasoning supports the position here taken.
 In Dair v. U.S., 16 Wall. 1, Justice DAVIS, in commenting
 upon the identical proposition here under consideration,
 says: "It *** is easy to see, if the obligors are at
 liberty, when litigation arises and loss is likely to fall
 upon them, to set up a condition unknown to the person whose
 duty it was to take the bond, and which is unjust in its
 result, that the difficulties of procuring satisfactory
 indemnity from those who are required by law to give it will
 be greatly increased." In State v. Peck, 53 Me. 284,
 BARROWS, J., has collected and distinguished the cases on
 this subject in a most satisfactory manner, and we might
 consistently rest our conclusion upon that case. In the
 conclusion of the opinion he says: "If there are cases
 that militate against the views here expressed, we are
 satisfied that they savor more of the growing looseness of
 commercial morality than of adherence to wholesome legal
 principles." If the doctrine of estoppel would not apply
 here, might not the inquiry
 [27 P. 87.] 
 well be asked, to what state of facts could it apply? Here
 the surety who defends this action had invested the principal
 with an apparent authority to deliver the bond, and there was
 nothing on the face of the bond, or in any of the attending
 circumstances, to apprise the official who accepted it that
 there was any secret agreement which should preclude the
 acceptance of the bond. This surety alone is certainly in
 fault, as but for this unwarranted trust in Ayres he would
 never have had it in his power to occasion the loss which the
 obligee of this bond must suffer if the defense made is
 successful. There is no reason why this opinion should be
 extended by further reviewing the authorities. The work has
 been done, and thoroughly done, in several well considered
 cases in Maine, Indiana, Kentucky, Missouri, Illinois, North
 Carolina, Virginia, Louisiana, and Michigan Hunt v. State, 53
 Ind. 321, Millett v. Parker, 2 Metc. (Ky.) 608; Nash v.
 Fugate, 24 Grat. 202; State v. Potter, 63 Mo. 212; State v.
 [1 Colo.App. 20] Peck, supra; Chalaron v. McFarlane, 9 La.
 227; Smith v. Peoria Co., 59 Ill. 412. These authorities
 satisfy us that the conclusion of the court in sustaining the
 demurrer to the answer must be affirmed.
 
 
 The
 next question for our consideration is as to the form of the
 judgment. The judgment rendered is against the estate of
 Isaac Cooper for the sum of $600, the penalty of the bond.
 "The court finds that the estate of Isaac Cooper is
 indebted to the plaintiff in the sum of $600, the penalty of
 the appeal-bond sued on herein, and that the damage sustained
 by the plaintiff herein amounts to the sum of $346.78. It is
 therefore by the court ordered and adjudged that the
 plaintiffs, Frank De Mainville and W.H. Brisbane, do have and
 recover, of and from the said defendant, the estate of Isaac
 Cooper, deceased, the sum of $600, the penalty of the bond
 aforesaid, together with their costs in this behalf expended,
 thereafter to be taxed, and that execution issue
 therefor." This was clearly error. The judgment should
 have been for the sum named as damages, payable out of the
 estate of the deceased in due course of administration.
 Gen.St., p. 1055, Â§ 3618, provides that, "upon a
 recovery of judgment *** against any executor or
 administrator, or a demand due from his testator or
 intestate, no execution shall be issued thereon, but the
 party recovering said judgment shall cause a transcript of
 the judgment entry to be filed in the county court, and the
 same shall be classed and paid as other demands are."
 This question is directly passed upon in Mattison v. Childs,
 5 Colo. 78. For this error the judgment must be reversed, and
 the cause remanded, with instructions to enter judgment for
 amount of damage, in conformity with this opinion.