MUNICIPAL COURT OF PROVIDENCE vs. UNITED STATES
FIDELITY AND GUARANTY CO. et al.

JUNE 26, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1)   *Guardian and Ward.   General and Special Bonds.*

While by the weight of authority the surety on the general bond of a guardian
is not liable for the default of his principal, when the act, whose performance
is required to be secured by a special bond, is not one of the general duties
within the express or implied terms of the statute providing the form of the
general bond, but rather an added duty for which special security is re-
quired, yet when the act, as a sale of real estate, is done, or the ward's title
passes, by reason of some proceeding in another court or upon the petition
of another person (although the guardian or ward is made party thereto)
and the money derived as a result of such proceeding is paid over to the
guardian, the surety is liable therefor as money belonging to the ward.

(2)   *Corporations.   Stock Deemed Real Estate.   Guardian and Ward.*

By an act of incorporation the shares of a corporation were to be deemed
real estate.   The corporation having disposed of its real estate holdings
distributed the proceeds among the stockholders and a guardian received the
share of his ward.   The corporation was not dissolved.

*Held,* that as the corporation retained its franchise its shares still had some
value, retaining their character as real estate, and in strictness there had
been no sale of the stock and a surety was liable on the general bond of the
guardian for the embezzlement of the money received by him, but if the
diminution in value of the stock by the sale of the real estate could be con-
strued to be a sale of the stock, the surety still was liable as such sale was
effected by the corporation and not by the guardian.

DEBT ON BOND.   Certified for an opinion on agreed
statement of facts under Gen. Laws, 1909, cap. 298, § 4.

BAKER, J.   This is an action of debt on bond.   The
action being at issue on its merits in the Superior Court, and
the parties having filed in the clerk's office an agreed state-
ment of the facts in said action, the case has been certified
by the Superior Court to this court for hearing and determi-
nation under the provisions of Section 4 of Chapter 298 of
the General Laws.

The essential facts of the agreed statement are these:   On
September 12, 1905, the defendant Albert L. Towle was
appointed by the Municipal Court of the city of Providence

guardian of the estate of his daughter, Florence M. Towle, then a minor under the age of fourteen years, and gave bond with the defendant company as surety in the sum of $30,000 in form as required in such case by the statute then in force, sub-section 3 of Section 1012 of the C. P. A., now sub-section 3 of Section 1 of Chapter 320 of the General Laws. The guardian duly filed an inventory of the ward's estate, which included among other things 26⅔ shares of the McNeal Corporation, a corporation created by the General Assembly of this State in 1847. At a meeting of the stockholders of the McNeal Corporation held September 28, 1910, it was voted to sell for the sum of $60,000 a portion of its estate and property, consisting of land with the building thereon, and the treasurer was instructed upon receipt of the purchase price of the property so sold, to pay out the net sum so received, after payment of the expenses, to the stockholders, in proportion to their respective holdings as a dividend in liquidation. In the distribution of proceeds of this sale, there was paid to said Albert L. Towle, as guardian of his said daughter's estate, $92.50 per share, in all $2,466.67.

Thereafter at a meeting of the stockholders of the McNeal Corporation, held August 15, 1911, it was voted to sell for the sum of $90,000 a certain lot or parcel of land with all the buildings and improvements thereon, and the treasurer was instructed upon receipt of the purchase price of the property so sold and after payment of the expenses of the sale, and all outstanding obligations of the corporation, to pay out the net sum so received to the stockholders in proportion to their respective holdings as a final dividend in liquidation.

In the distribution of the proceeds of this second sale, there was paid to said Albert L. Towle, as guardian as aforesaid, $137.54 per share, in all $3,667.70. At both of said meetings of the McNeal Corporation said guardian was duly represented by a proxy who voted upon said ward's stock in favor of said motion to sell and to distribute the proceeds. The first payment in distribution of proceeds was made November 1, 1910, the second September 9, 1911. The

entire amount of the first payment was upon its receipt by
him embezzled by said guardian, and of the second payment
the sum of $1,667.64 was embezzled by him upon its receipt,
making in all the sum of $4,134.31 of said payments em-
bezzled by him.  The deed evidencing the ownership of said
shares by said ward was placed in the joint custody of the
guardian and of the surety company in a safe deposit box
where it continuously remained during the existence of the
guardianship.  The surety company had no knowledge of the
liquidation of the McNeal Corporation or of the payments
to the guardian until after their embezzlement.  The guard-
ian never applied to the Municipal Court for authority to
dispose of said stock.  The final account of the guardian
charging himself with said amount and admitting its em-
bezzlement has been allowed by said Municipal Court.

The ward became of age March 1, 1917.  This action on
said bond for her use and benefit was begun December 12,
1917.  The condition of the bond is in the language of the
statute and the declaration alleges its breach, first, in that
the guardian did not manage and dispose of all the property
of his ward which came to his possession according to law,
and second, in that at the expiration of his trust and after
the settlement of his account in the Municipal Court he did
not pay over and deliver to her all the property due from
him on such settlement.

The surety company denies its liability for the sum now
sought to be recovered and bases its denial upon Section 3 of
the act of incorporation of the McNeal Corporation and the
provisions of the General Laws relating to the giving of
bonds by guardians.  The portion of said Section 3 relied
on is as follows:  "The number of shares of the capital stock
shall be six hundred and forty, and the shares shall be
deemed real estate, and to be transferred by deed, in the
same manner, and with the same formalities and legal
requisites as are necessary to the transfer of real estate, by
the laws of this state  .  .  ."  Elsewhere in the act the
capital stock of the corporation was limited to $64,000.

The Supreme Court of this State as early as 1837 in *Arnold* v. *Ruggles*, 1 R. I. 165, held that shares of stock in the Washington Bridge Society, a corporation whose property was chiefly if not wholly real estate, were personal property, and since 1866 continuously it has been the law of the State that, "The shares into which the capital stock of any corporation shall be divided shall be deemed to be personal estate, unless otherwise provided in the act creating the corporation." We shall not now discuss or question the power of the General Assembly to enact that that intangible thing, a share of stock, shall be deemed to be real estate. No doubt the occasional appearance of such a provision in some of the earlier acts of incorporation is based upon the view, once somewhat prevalent, but now in this country at least generally discarded, that a share of stock in a corporation whose business was chiefly the dealing in, and owning real estate itself had the character of real estate. So generally are shares of stock recognized as personalty that, as is stated in the surety company's brief, the shares of stock of the McNeal Corporation were apparently as a matter of course listed in the inventory of the ward's estate as personal property, thereby presumably increasing the size of the bond and the premium therefor materially. Inventorying them thus does not, of course, affect their real character, and we shall consider them real estate, as so declared in the act of incorporation.

The surety company calls attention to our statutes regulating the sale of real estate by guardians, that under them it is necessary to obtain permission of a probate court to sell, and to specify the purpose therefor in the decree, that a new bond must be given, with a condition that the proceeds of sale shall be used for the purposes specified in the decree of sale, and that the surplus proceeds, if any, are still to be deemed real estate, and urges that a surety on the general bond, given when the guardian is appointed, cannot be held liable for the misapplication or misuse of the proceeds of the sale of real estate, which is covered by the special bond. Its

further claim is in effect that all of the money paid to the guardian by the McNeal Corporation was proceeds of real estate belonging to the ward, and that as surety it is not liable for its misappropriation by the guardian.   The decisions of courts upon the point as to the liability of sureties on a guardian's general bond for the proceeds of sale of real estate have not been uniform by any means and, as might be expected, the statutes governing the matter sometimes vary in important particulars.   We think, however, that the decided trend of judicial decision and the weight of authority uphold the view that the surety on the general bond is not liable, when the act, whose performance is required to be secured by a special bond, is not one of the general duties within the express or implied terms of the statute providing the form of the general bond, but rather an added duty for which special security is required.   *Lyman* v. *Conkey,* 1 Met. 317; *Judge of Probate* v. *Toothaker,* 83 Me. 195; *People* v. *Huffman,* 182 Ill. 390, are cases showing this and there are many other cases to the same effect.   There is no case in Rhode Island precisely in point, but the grounds of the decision are similar in *Probate Court* v. *Hazard,* 13 R. I. 3, where an administrator *cum testamento annexo* sold real estate under a power given in the will.

In all the cases brought to our attention where the surety on the general bond is relieved from liability for the proceeds of the sale of real estate, the sale has been made by the guardian.   But when, however, the sale is made, or the ward's title passes by reason of some action or proceeding in another court, or upon the petition of another person, although the guardian or ward is made party thereto, the rule seems to be different.   For example in *Potter* v. *Thompson,* 23 Ind. 607, it was held that when in a proceeding for partition the real estate of the ward was sold by a commission, under order of the court, and the money derived therefrom was paid over to the guardian, he and his sureties would be liable therefor as money belonging to the ward. Other cases in partition in which it was similarly held are *Hooks* v. *Evans,* 68 Iowa 52, *Benson* v. *Benson,* 70 Md. 253,

*Reed & Roper* v. *Hedges,* 16 W. Va. 167 and *Mahan* v. *Steele,* 22 L. Rep. (Ky.) 546. In *Mann* v. *Mann,* 119 Va. 630 (1916) there was condemnation by eminent domain of land of the ward. The question was as to the liability of surety on general guardian's bond. The court on page 635 says, "A conversion of the real estate into personalty is thus accomplished—not by the guardian but by the statute under consideration. The conversion having been accomplished, the compensation and damage money arising therefrom is personalty, belonging to the ward, which under unquestioned rules applicable to the relationship of guardian and ward, it is the duty of the guardian to collect. . . . The guardian having in fact received the $800 . . . being money he had the right to receive and which it was his duty to collect and receive, we are of opinion that his surety . . . was liable on said guardianship bond therefor." See also *Gray* v. *Brown,* 1 Richardson (S. C.) 351, *Colburn* v. *State,* 47 Ind. 310, 314 and *Allen* v. *Kelly,* 171 N. Y. 1, 5. In the latter case the general guardian of an infant appointed by a surrogate, petitioned the county court for the sale of his ward's real estate. A special guardian was appointed and a reference ordered. The referee reported the sale to be necessary for the ward's maintenance. A sale was had and the net proceeds thereof were ordered to be turned over to the general guardian. His general bond required him "to render a just and true account of all moneys and other property received by him." The sureties on his general bond were held liable to account for the moneys which came to the guardian's hands as a result of the sale of the real estate.

In the present case there is no suggestion that the guardian sold or attempted to sell the shares of stock in the McNeal Corporation belonging to his ward, the real estate in question. This corporation possessed the powers ordinarily given to a corporation. It had authority "to have, possess and enjoy, purchase and receive" real estate and personal property "of every kind and nature" and the same "to sell, grant, demise, aliene and otherwise dispose of." In the

exercise of one of its powers, this corporation sold first a portion of its real estate, and afterwards the remainder thereof, and on each occasion, as was its right, decided not to retain the proceeds of sale, but to reduce the amount of the property held and owned by it by paying the net proceeds of such sales in cash to its shareholders in proportion to their respective holdings.    The fact that the guardian attended by proxy the meetings of the corporation and voted for the proposition to sell and to distribute the proceeds, we do not regard as of significance as affecting the decision in this case.    In each instance the shares of stock remained, retaining their character as real estate, but of diminished value by the act of the corporation itself.    So far as appears while the McNeal Corporation has ceased an active existence, it has not dissolved, and if it retains its franchise, it presumably is of value.    If so, the shares of stock still retain some value.    The guardian had the right to receive the money so paid him by the treasurer of the McNeal Corporation, and it was his duty to receive it.

We are of opinion that the surety company is liable on the bond now in suit.    As a matter of fact there has in strictness been no sale of the shares of stock.    But if the diminution in value of the stock by the sale of the real property of the corporation and the distribution of the proceeds could be construed to be a sale of the stock, then under the rule recognized in the cases cited above the company would still be liable, as such sale was effected by the corporation and not by the guardian.    We decide, therefore, that the United States Fidelity & Guaranty Company is liable on said bond to the plaintiff for the moneys received by said guardian from said McNeal Corporation in liquidation and by him embezzled, and that the plaintiff is entitled to judgment in the common form for the penal sum of said bond.

The papers in said cause are sent back to the Superior Court with our decision certified thereon.

*Mendell W. Crane*, for plaintiff.

*Mumford, Huddy & Emerson, George H. Huddy, Jr.*, for defendant.