WARWICK and Others *v.* THE STATE on the relation of GLADDEN.

A mother died intestate, leaving personal property. No letters of administration were taken out upon her estate. The guardian of her children took possession of the property, and realized from it a certain sum, &c. *Held*, that the sureties on his bond were responsible for a faithful application, &c., of such money.

The bond given by a guardian in assuming the duties of his trust, was, by the R. S. 1838, only designed to secure the faithful appropriation and investment of the personal estate of the ward, including the rents of the real estate.

A guardian applied to sell real estate of his ward, and sold the same while the R. S. 1838 were in force, under an order of the Probate Court, without having given an additional bond pursuant to the statute. *Held*, that the sureties on the original bond were not responsible for the accounting for or application of the purchase-money.

*Wednesday,
November 29.*

APPEAL from the *Tippecanoe* Court of Common Pleas.

PERKINS, J.—Debt by the *State* on the relation of *Jacob W. Gladden* against *Warwick* and others, on the bond of one *David Patton*, who had been the guardian of said *Gladden*. Judgment for the plaintiff for 461 dollars and 21 cents.

It is unnecessary to state the pleadings, as the cause was finally submitted to the Court upon an agreed case. We gather from it these facts, viz.:

That on the 18th day of *August*, 1838, *David Patton* was appointed guardian of the persons and estates of the children and heirs of *William Gladden*, deceased, of whom the relator, *Jacob W.*, then an infant, but now of age, was one; that said *Patton* executed his bond according to law, with the defendants, *Warwick* and *Walker*, as his sureties; that *Patton* acted as guardian till *August*, 1848, at which time he was removed from office by the *Tippecanoe* Probate Court; that during the ten years of his service, he received amounts of money, in his official capacity, from three different sources, the share of the aggregate of which, belonging to the relator in the suit, was 460 dollars and 21 cents, the amount for which judgment was rendered below; that the sources from which said sum was derived were, from the sale of real estate of the ward, 228 dollars and 27 cents, from the effects of the mother of said relator, who departed this life soon after her husband, the relator's father, 118 dollars and 87 cents, and from the administrator of the estate of the relator's father, the balance of said 460 dollars and 21 cents.

On the sale of the real estate of the ward above mentioned, no bond was executed by the guardian, and it is sought, in this suit, to hold the sureties in his original bond as guardian liable for the moneys derived from the sale of said real estate.

The 118 dollars, derived from the estate of the mother of the relator, were received in this manner. The mother died intestate. No letters of administration were taken out upon her estate. The guardian of her children, the above-named *Patton*, took possession of and realized from it over 1,000 dollars, of which the share of the relator was a fraction over 118 dollars. Her estate consisted of personalty alone. It is objected that the sureties in the original bond of the guardian can not be held liable for the sum derived from the sale of the ward's real estate, nor for the sum realized from the estate of the mother.

First, as to the latter sum.

The guardian, by virtue of his office, is entitled to receive the personal estate which may come to his wards within

Nov. Term,
1854.

WARWICK
v.
THE STATE.

the state in which he is appointed. Had an administrator been appointed upon the estate of the relator's mother, it would have been his duty to hand over to the guardian the surplus on settlement of said estate. Now, we do not see that it can make much difference to the defendants, the sureties of the guardian, that said guardian took the property of said estate in the manner he did, instead of receiving it from a regularly appointed administrator. Creditors might have sued the guardian as executor *de son tort*, but it does not appear that there were any; and as against all but creditors, in the absence of an administrator, the guardian would be entitled, by virtue of his office, to the personal estate going to his wards. We may properly remark, that in cases where the personal estate should accumulate in the hands of a guardian, the Court, under the statute, could require additional security; and existing sureties, who might be unwilling to continue such, could procure their discharge. Hence, as to personal estate, sureties who do not procure their release, have no ground to complain of the amount they may become liable for.

As to the sum derived from the sale of the ward's real estate, it is plain, from the provisions of the R. S. of 1838 on the subject (and they govern this case), that the original bond of a guardian is only designed to secure the faithful appropriation and investment of the personal estate, including the rents of real. Sections 51, 52, p. 193. Such is the property of which the guardian, by virtue of his office, as we have before remarked, has the right of control, and it is all that is in contemplation when the sureties enter into his official bond. Our statute authorizes guardians, in certain contingencies, by permission of the proper Court, to sell real estate of their wards; but it expressly provides that this shall only be done upon the guardian's executing a bond, in double the appraised value of the real estate proposed to be sold, which bond is to be executed as a part of the proceedings on the application for the sale. This bond is entirely distinct from, and disconnected with, the guardian's original bond. It is not treated as addi-

tional to it, to make up its sufficiency. No matter how ample and satisfactory the original bond may be as a security, the sale can not be permitted upon it, but only upon a new independent obligation. This fact distinguishes the case of a guardian, under the statutes of 1838, from that of an administrator under those statutes, touching the sale of real estate, and furnishes the reason for a different decision in this suit from that made in *Salyer* v. *The State, ante,* p. 202.

We think the Court erred in including in its judgment the proceeds of the sale of the ward's real estate, and for this cause the judgment must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*D. Mace* and *R. Jones,* for the appellants.

*G. S. Orth* and *E. H. Brackett,* for the state.