## LIZZIE JESSUP

### *v.*

## JOHN S. JESSUP *et al.*

*Filed at Mt. Vernon January 18, 1882—Rehearing denied May Term, 1882.*

1. FORMER ADJUDICATION—*whether conclusive—guardian and ward as tenants in common—claim by the former for contribution for improvements—adjudication by county court.* All questions relating to a claim of a guardian against his ward, on final settlement in the county court, and necessarily involved in the inquiry, within the jurisdiction of the court, will be regarded as finally and conclusively settled by the adjudication of that court in disallowing such claim; but judgments or orders of this kind are not to be extended, by mere intendment, to matters not necessarily involved in the determination.

2. The presentation by a guardian in his account against his ward, in the county court, of a claim for one-half of the cost of improvements put upon a lot in which his ward was a half owner in common with himself and another, made in pursuance of an executory contract made by the ward's father with the other tenants in common, and the disallowance of such claim by that court, is no bar to the guardian claiming equitable relief as to the enhanced value of the lot, in consequence of such improvements, on a bill by him for partition of the property, the question in the latter case not having been necessarily involved in the proceeding in the county court.

3. GUARDIAN AND WARD *as tenants in common—enforcing contribution by the ward for improvements made by the guardian.* A guardian who is tenant in common with his ward, of a lot, can not, without an order of the proper court, expend large sums of money out of his own private funds in

improving the same, wholly disproportionate to his ward's means, and then come into court and have one-half of the expenditures allowed against his ward.

4. Where the guardian does make expensive improvements upon the common property without the sanction of the county court, upon ordering a sale of the premises in a suit for partition, the ward should only be required to make compensation for his proportionate share of the improvements according to their then present cash value, and not according to their original cost.

5. Decree in partition—*construed, as to apportioning cost of improvements.* A guardian made improvements upon a lot owned by him in common with his ward, in pursuance of a contract made by him and the ward's father before his death, and on a bill for partition the decree of sale first found the value of the lot without the improvements, and the respective amounts contributed by the parties making the improvements, and ordering the lot with the improvements to be sold, and the proceeds divided according to the respective interests of the parties thus ascertained: *Held,* that this required that the ward and the other co-tenants should first be paid each one-half the full value of the lot as thus ascertained, and that the residue of the proceeds, representing the value of the improvements, should be divided between the parties in proportion to the amounts contributed by them, respectively, to the making of the improvements.

6. Administration of estates—*as to administrator performing executory contracts made by his intestate.* While it is true that an administrator is liable on all the contracts of his intestate, including executory as well as executed contracts, which are not of a personal character, yet in the case of executory contracts the legislature has expressly provided that they may be performed by the executor or administrator, "when so directed by the county court."

7. If the administrator undertakes to perform such a contract without the direction of the court, he does so at his peril, if loss shall occur. If the performance of a contract in the case of an insolvent estate will result in giving the party with whom such contract was made, an undue advantage over other creditors of the estate, it should not be performed, and if the administrator does so without the sanction of the county court, he will be liable to other creditors who may be injured thereby.

Appeal from the Circuit Court of Will county; the Hon. Josiah McRoberts, Judge, presiding.

On the 21st day of April, 1857, Cornelius Jessup, Edward H. Jessup, and John S. Jessup, entered into partnership, as hardware merchants, under the firm name of "Jessup Brothers." The storehouse in which their business was sub-

sequently carried on, was situated on the north 28 feet of lot 4, in block 4, in Wilmington, Will county, this State, one-half of which belonged in fee to Cornelius, and the remaining half belonged to the other two partners. The partnership continued, and the business was conducted on the above mentioned premises until on or about the 1st of March, 1863, when Cornelius died intestate, leaving appellant, Lizzie Jessup, his only child and heir at law. After the death of Cornelius, the survivors, Edward and John, continued the business at the same place, under the style of "Jessup & Brother," until the 4th day of October, 1875, when Edward died, leaving Mattie Jessup, his widow, and two children, John D. and Lewis Jessup, his only heirs.

Prior to the death of Cornelius the members of the firm of Jessup Brothers had agreed among themselves to remove the old storehouse, and put up in its stead a more commodious and expensive business house, and to this end they had already entered into certain executory contracts for some of the material and work required for the construction of the same. After his death there seems to have been no material change in their manner of doing business, and the above agreement, with respect to the removal of the old and the putting up of a new business house, was carried out by the survivors, at a cost of some $9000.

On the 1st of June, 1863, John S. was appointed, by the probate court of Will county, administrator of the estate of Cornelius, and on the 11th of December following he was also appointed, by the same court, guardian of Lizzie Jessup, both of which trusts he accepted, and entered upon their performance. On July 9, 1866, he made his final settlement with the probate court as administrator, from which it appears he had accounted for all moneys that came into his hands belonging to the estate, except what had been expended in the construction of the new business house. On the same day he filed his first report as guardian, showing receipts by

him to the amount of $674.75, and disbursements amounting to $1056.01. No further report appears to have been made by him as guardian until the 8th of May, 1876, near ten years afterwards, when he presented another report, in which he claimed a balance due him from his ward of $7171.65. In this report he charged his ward with one-half of the cost of the new business house, and also credited her with one-half the rents, commencing with the year 1866. The account between the guardian and his ward, as shown by this report, was contested by the latter, both parties being represented by counsel. Upon a full hearing of the controversy, the court found the guardian indebted to his ward in the sum of $227.64, and the account was restated accordingly. It appears, from the restatement of the account, the court excluded from the estimate all items with which the guardian had credited himself on account of advances claimed to have been made by him for his ward in the construction of the new business house, and all interest on such advances. So far as this record shows, this adjudication of the county court is still in full force and effect.

Under this state of facts John S. Jessup, the guardian, on the 20th of August, 1877, filed the present bill in the Will circuit court, making appellant, and the widow and heirs at law of Edward H. Jessup, parties, by which he seeks an accounting with respect to the partnership affairs, and a partition of the lot in question, and asks that in making such partition appellant be required to make compensation for one-half the improvements on the premises, which are charged to have been made at the exclusive cost of complainant and Edward H. Jessup, except $913.71, which is conceded to have been furnished by appellant. Appellant filed an answer and cross-bill, setting up her interests in the premises, and also the adjudication in the county court, above mentioned, in bar of complainant's claim to compensation on account of improvements, as just stated. The cross-bill

further shows, that in 1872 complainant and Edward H. Jessup executed to Charles H. Jerome a mortgage upon the premises, to secure a loan of $3000, which is still unsatisfied, and makes Jerome a party defendant. Jerome answered, and also filed a cross-bill, asking a foreclosure of his mortgage.

. The court, upon the hearing, found that appellant was the owner in fee of one undivided half of the lot, and that complainant and the heirs of Edward H. Jessup were the owners of the other half, subject to the Jerome mortgage; that the present value of the lot without the improvements was $1500; that the total cost of the improvements thereon was $8989.47, and that of that sum appellant had contributed $913.71, and that complainant and Edward H. Jessup had contributed the residue. And it appearing the premises could not be partitioned without prejudice, the court thereupon ordered the same to be sold, and that the proceeds thereof, in excess of the value of the lot without the improvements, be divided in proportion to the amounts respectively contributed by the parties to the making of said improvements, from which decree Lizzie Jessup alone has prosecuted an appeal to this court.

Messrs. Boutell & Waterman, for the appellant:

The decree of the court below is erroneous, because it entirely disregards the prior adjudication of the county court upon the account of complainant against Lizzie Jessup, for the improvement of the premises in question, the matter of this account being, we insist, *res judicata*. *Voorhes* v. *Bank of the United States*, 10 Peters, 469; *Vallandingham* v. *Ryan*, 17 Ill. 25; *Rogers* v. *Higgins*, 57 id. 247; *Howell* v. *Goodrich*, 69 id. 556; *Dalton* v. *Bentley*, 15 id. 420; *Hamilton* v. *Quimby*, 46 id. 90; *Betts* v. *Starr*, 5 Conn. 550; *Embury* v. *Cannon*, 3 Comst. 522; *Doty* v. *Brown*, 4 id. 71; *White* v. *Coatsworth*, 2 Seld. 143; *Gardner* v. *Buckee*, 3 Cow. 126; *Hopkins* v. *Lee*, 6 Wheat. 109; *Kelly* v. *Donlin*, 70 Ill. 385.

The allowance of a guardian's account is a judicial act. *Bond* v. *Lockwood*, 33 Ill. 212.

Fixing the amount due from an administrator is *res judicata*.   *Gilbert* v. *Guptill*, 34 Ill. 112.

The decree is erroneous, because Lizzie Jessup, without whose consent they (the improvements) were made, is charged therein with the cost of the same, which the evidence shows far exceeds their value, as well as the enhanced value of the premises arising therefrom.   *Louvalle et al.* v. *Menard et al.* 1 Gilm. 45 ; *Dean et al.* v. *O'Meara et al.* 47 Ill. 121.

The decree is erroneous, because inconsistent with itself. It finds that the cost of the improvements was $8075.76. It also finds the cost of the improvements to have been $8989.47.

Messrs. GARNSEY & KNOX, for the appellees :

As between tenants in common, one ought not to profit by improvements made by another, but should make fair contribution.   *Louvalle* v. *Menard*, 1 Gilm. 40 ; *Gardner* v. *Dederichs*, 41 Ill. 164; *Dean* v. *O'Meara*, 47 id. 121; *Kurtz* v. *Hibner*, 55 id. 514; *Mahoney* v. *Mahoney*, 65 id. 406 ; *Turner* v. *Bennett*, 70 id. 268 ; *Roberts* v. *Beckwith*, 79 id. 246 ; *Wilton* v. *Tazewell*, 86 id. 29.

The proceeding in the county court was solely to compel John to account for his mismanagement of his ward's estate, while this is a proceeding to equitably partition realty, and hence the adjudication in the county court is no bar to the equitable relief sought.   *Duchess of Kingston's case*, 2 Smith's Leading Cases, (7th Am. ed.) 574; *Bruce, V. C. Barrs* v. *Jackson*, 1 Younge & Coll. 598; S. C. 20 Eng. Ch. Rep. 585.; 2 Smith's Leading Cases, (7th ed.) 597.

A judgment is conclusive upon the parties to it only in respect to the grounds covered by it, and the law and the facts necessary to uphold it.   Bigelow on Estoppel, p. 22.

This court has repeatedly recognized the authority and followed the doctrine of these English cases, and we deem it sufficient to cite only a few of the decisions of this court, in addition to the above: *Gray* v. *Gillilan,* 15 Ill. 453; *Stone et al.* v. *Wood,* 16 id. 177; *McCloskey* v. *McCormick,* 44 id. 338; *Miller* v. *McManus,* 57 id. 128; *Williams* v. *Walker,* 62 id. 518; *Embury* v. *Conners,* 3 Comst. (N. Y.) 523.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The propriety of this decree is questioned chiefly on the ground that appellant's right to share in the proceeds of sale in excess of the present value of the lot, exclusive of improvements, is made to depend upon the relative amount contributed by her to the improvement of the lot. She earnestly insists, by her counsel, that inasmuch as John Jessup, her guardian, formally presented in the probate court, for allowance, an itemized account against her, as his ward, for one-half of the cost of the improvements for which he now seeks to recover out of the proceeds of the sale of the property, which account, after a formal hearing and due consideration, was disallowed and rejected by the court, it is a complete bar to the claim in the present proceeding.

It is clear that all questions relating to this claim within the jurisdiction of the court, and necessarily involved in the inquiry then before it, must be regarded as finally and conclusively settled by the adjudication in that proceeding; yet, on the other hand, it is well settled that judgments or orders of this character are not to be extended, by mere intendment, to matters not necessarily involved in the determination. The presentation of this claim in the probate court by the guardian did not raise the question involved in the present case. The inquiry here is, assuming appellee and Edward Jessup made these improvements mainly out of their own private funds, ought they, in a division of the proceeds of the

sale of the lot with the improvements on it, be compensated out of the proceeds, in so far as its value has been enhanced by their private funds? No question of this kind was involved in the proceeding in the county court. The question there presented was, whether a guardian, who is tenant in common with his ward, of a lot of ground, may, without any authority from the county court or other tribunal, go on and expend large sums of money, out of his own private funds, in improving the same, wholly disproportionate to his ward's means, and then come into court and have one-half of these expenditures allowed against his ward. The county court properly held that this could not be done, and from a careful consideration of the record we are satisfied that this is all that was determined by the refusal of the county court to allow the claim. Such being the case, the order of the county court in disallowing the claim as a charge against the ward in her guardian's account, can not properly be regarded as a bar to the claim as now presented.

It may be supposed that, inasmuch as a considerable portion of the improvements made on this lot was under contract before the original partnership was dissolved by the death of Cornelius Jessup, appellee, as his administrator, was bound to go on and perform the contract, and that the estate would therefore be bound by his action. With some modification this position may be conceded to be substantially correct. It is true that an administrator is liable on all the contracts of his intestate, including executory as well as executed contracts, which are not of a personal character. Yet in the case of executory contracts the legislature has expressly provided, that "all contracts made by the decedent may be performed by the executor or administrator, when so directed by the county court;" and if the administrator undertakes to perform such a contract, as was done in this case, without the direction of the county court, he does so at his peril, if loss should occur. If the performance of a contract will, in

the case of an insolvent estate, result in giving the party with whom such contract was made, an undue advantage over other creditors of the estate, it should not be performed, and if the administrator does so without the sanction of the county court, he will be liable to other creditors who may be injured thereby. In this case the administrator proceeded without authority from the county court to make large expenditures on account of such a contract, and without the necessary funds in his hands, belonging to the estate, to meet them, and if he has sustained a loss in consequence of it, it is attributable to his own folly in disregarding a plain provision of the statute. *Smith, Admx.* v. *Wilmington Coal Mining and Manf. Co.* 83 Ill. 498.

The only remaining objection to the decree which we deem important to notice, is that which questions the method adopted by the court in determining the several interests of the parties in the proceeds of the sale. It is claimed by appellant, that under the decree as rendered she is required to make compensation for the improvements at their original cost, whereas she should only be required to pay for them according to their present value. While we concede appellant should only be required to make compensation for her proportionate share of the improvements according to their present cash value, and not according to their original cost, yet we do not consider the decree susceptible of the construction given to it by appellant, to the extent claimed. If this objection to the decree had any foundation in fact, the error would certainly be fatal, for it must be conceded it would be highly inequitable to require appellant to make compensation for the improvements on the basis of their original cost. But as we understand the decree nothing of the kind is required. As we construe it, the decree first ascertains the present value of the lots without the improvements, and the respective amounts contributed by the parties to the making of the improvements, and then orders the lots with the

improvements to be sold together, and the proceeds to be divided according to the respective interests of the parties thus ascertained. From this we understand, appellant, on the one hand, and the complainant and the heirs of Edward Jessup, on the other, are to be first respectively paid one-half the full value of the lot as thus ascertained, and the residue of the proceeds, which must necessarily represent the present value of the improvements, is to be divided between the parties in proportion to the amounts contributed by them, respectively, to the making of the improvements. We see nothing improper in this. Indeed, we are aware of no other equitable basis upon which the present value of the improvements could be otherwise properly divided. Whether some other, more appropriate, method of ascertaining their respective interests in the property should or might have been adopted, it is unnecessary to inquire, as none has been suggested.

Perceiving no material error in the proceedings, the decree of the circuit court will be affirmed.

*Decree affirmed.*

| 102 | 489 |
| 172 | 220 |

