JOHN MORRIS. v. ALICE N. COOPER, et al.

1. GUARDIAN'S BOND, *Construed.* From the language of the bond sued on in the present case and other facts, *held,* that the bond was given under § 7 of the act relating to guardians and wards, and not under § 15 of said act.

2. ———— *Purpose of Bond.* A guardian's bond executed under § 7 of the act relating to guardians and wards is intended as a security only for the proper use of the personal estate of the ward and the rents and profits of his real estate, and is not intended as a security for the proper use of the purchase-money received by the guardian on the sale of the real estate of the ward — another bond being required to be given for that purpose by § 15 of said act.

*Error from Coffey District Court.*

ACTION by *Alice N. Cooper* and another, against *John Morris* and two others, as sureties on a guardian's bond. July 30, 1884, judgment was rendered on the verdict for plaintiffs for $361.64. To reverse this judgment, the defendant *Morris*

brings the case to this court. The opinion contains a sufficient statement of the facts.

E. N. Connal, for plaintiff in error.

G. E. Manchester, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Alice N. Cooper and Caleb T. Noell, against Isabella Holland, Augustine Holland, and John Morris, on a guardian's bond. Judgment was rendered in favor of the plaintiffs and against the defendants, and the defendant John Morris brings the case to this court for review, making Alice N. Cooper and Caleb T. Noell the defendants in error.

It appears from the evidence in the case that sometime in November, 1861, Caleb T. Noell died, leaving a widow, Isabella Noell, now Isabella Holland, and a daughter, Alice N. Noell, now Alice N. Cooper; and soon afterward, to wit, on March 27, 1862, a son, Caleb T. Noell, was born. Caleb T. Noell, deceased, also left a small amount of real estate, but whether he left any personal property or not, is not shown. On May 13, 1870, Isabella Holland, as principal, and Augustine Holland, her husband, and John Morris, as sureties, executed the following bond, and Isabella Holland took and subscribed the following oath, to wit:

"GUARDIAN'S BOND.

"*Know all Men by these Presents*, That we, Isabella Holland, as principal, and ——— and Augustine Holland, as sureties, are held and firmly bound unto the state of Kansas in the sum of five hundred dollars, for the payment of which we bind ourselves, our heirs, executors and administrators by these presents, upon the condition that whereas, the said Isabella Holland has been appointed by the probate court of Coffey county, Kansas, guardian of the persons and estate of Alice N. Noell and Caleb T. Noell, children and heirs of Caleb T. Noell, deceased, minors, of Coffey county, Kansas, under the age of eighteen years:

"Now if the said Isabella Holland shall faithfully discharge all of her duties as such guardian according to law, then the

above bond to be void, otherwise to remain in full force in law.

"In witness whereof, we hereunto subscribe our names, this 13th day of May, 1870.     ISABELLA HOLLAND.     (Seal.)
                                          JOHN MORRIS.          (Seal.)
                                          AUGUSTINE HOLLAND.    (Seal.)

"STATE OF KANSAS, COFFEY COUNTY, *ss.*—I, Isabella Holland, do solemnly swear that I will faithfully and impartially and to the best of my ability, discharge all the duties that shall devolve upon me as guardian of the persons and estate of Alice N. Noell and Caleb T. Noell, children and heirs of Caleb T. Noell, deceased, minor heirs of Caleb T. Noell, deceased.                                ISABELLA HOLLAND.

"Sworn to and subscribed before me, this 13th day of May, 1870.                      JOHN M. RANKIN, *Judge.*"

This bond and oath were filed in the office of the probate judge on May 18, 1870, and on the same day Mrs. Holland was by the probate judge appointed guardian for the property of the minor heirs of Caleb T. Noell, deceased, by the following order, to wit:

"IN VACATION, May 18, 1870.—And now comes Isabella Holland, and represents that she is the mother of Alice N. Noell and Caleb T. Noell, minors under the age of fourteen years, and that the said heirs have property which may depreciate in value or remain unproductive if a guardian be not appointed; and the court being satisfied of the fitness of said Isabella Holland to act as guardian of the said wards, it is ordered that letters of guardianship issue accordingly to the said Isabella Holland, she having filed a sufficient bond as such guardian.     JOHN M. RANKIN, *Probate Judge.*"

On the next day, to wit, May 19, 1870, Mrs. Holland filed an application in the office of the probate court, asking permission to sell the aforesaid real estate which had descended to the said minor children, as the heirs of Caleb T. Noell, deceased, which application was granted by the probate court. No other or additional bond was ever given by Mrs. Holland; but, nevertheless, on June 6, 1870, as guardian, she sold said real estate to Joseph Newlan for the sum of $250, which sale was approved by the probate court; and on the same day Mrs. Holland executed to Newlan a guardian's deed for the

land.   On June 8, 1876, Mrs. Holland reported that she had
in her hands, belonging to her wards, $258, principal and in-
terest, all being the proceeds of said sale of real estate.   On
May 21, 1883, she further reported to the probate court that
she had in her hands, belonging to her wards, $361.64; this
sum being the said $258 and interest.   This was her last re-
port to the probate court.   These reports were approved by
the probate court.   It does not appear that Mrs. Holland ever
received anything belonging to her wards except the proceeds
of the sale of said real estate and interest thereon.   Some time
after the time when this last report was made, but just when
is not shown, this action was commenced.   It was tried on
July 24, 1884, before the court and a jury, and the jury ren-
dered a verdict in favor of the plaintiffs and against the
defendants for $361.64; and to reverse this judgment the de-
fendant Morris now brings the case to this court.

This action was on the aforesaid bond, and the principal
question involved in the case is, whether there was any such
breach of the bond as would render the sureties liable thereon.
The plaintiffs below, defendants in error, claim that there was,
while the defendant Morris, plaintiff in error, claims that there
was not.   The statutes providing for the giving of guardian's
bonds, §§ 7 and 15 of the act relating to guardians and wards,
read as follows:

"SEC. 7.   Guardians appointed to take charge of the prop-
erty of the minor must give bond, with surety, to be approved
by the court, in a penalty double the value of the personal
estate, and of the rents and profits of the real estate of the
minor, conditioned for the faithful discharge of their duties as
such guardian, according to law.   They must also take an oath
of the same tenor as the condition of the bond."

"SEC. 15.   Before any such sale or mortgage [of real estate]
can be made or executed, the guardian must give security to
the satisfaction of the court, the penalty of which shall be at
least double the value of the property to be sold or of the
money to be raised by the mortgage, conditioned that he will
faithfully perform his duties in that respect, and account for
and apply all moneys received by him, under the direction of
the court."

The first question presented in this case is, whether the bond in controversy was executed under § 7 of the act relating to guardians and wards, or under § 15 of said act.   We think it was executed under § 7.   We would think so from

1. Guardian's bond, construed.

the language of the bond itself.   Also the oath required to be taken by § 7, by a newly-appointed guardian, is attached to the bond, which would not be the case if the bond were given under § 15, which does not require that any oath should be taken.   It was executed before Mrs. Holland was appointed guardian, and not afterward.   It was filed on the day on which she was appointed guardian, and the appointment seems to have been made in pursuance of the filing of such bond.   And at the time when the bond was executed and filed, no application had been made for the sale of any of the real estate of the minor children; and the bond does not mention real estate; and whatever may have been the intention of Mrs. Holland, there is nothing tending to show that at that time any of the other parties or the probate court had in contemplation the sale of any of such real estate.   There is certainly nothing that tends to show that Morris when he executed the bond had the slightest hint or intimation that any of the real estate was ever to be sold.   We therefore think that the bond was given under § 7 of the act relating to guardians and wards, and not under § 15. ·

The question then arises: Was there any breach of such bond?   This question we think must be answered in the negative.   This identical question has been decided under a similar statute by the supreme court of Indiana.   That court held that a bond given by a guardian on assuming the duties of his trust is designed only to secure the faithful appropriation and investment of the personal estate of the ward, including the rents of the real estate, and that the sureties on such bond

2. Purpose of guardian's bond.

are not responsible for the misapplication of money received on the sale of real estate; the statutes requiring that another bond should be given as a security for the proper use of the purchase-money received on the sale of real estate. (*Warwick v. The State*, 5 Ind. 350.

Also, to the same effect, see *Williams v. Morton,* 38 Me. 47.)
And in Wisconsin it is stated as a general rule "that where
an officer is required to perform a duty which is special in its
nature, and he is required to give a special bond for the faith-
ful performance of such duty, in the absence of any declara-
tion that the general bondsmen shall be liable, no such liability
attaches." (*Milwaukee County v. Ehlers,* 45 Wis. 281, 293.)
And the Wisconsin court cites a large number of authorities
in support of the foregoing proposition. Under § 7 of the act
relating to guardians and wards, the guardian has no right to
sell real estate. He simply takes charge of the personal prop-
erty and the rents and profits of the real estate; and this is all
that the bond is intended to cover. If it should be desired
that the guardian should sell any portion of the real estate for
his ward, he must first procure a special order for that pur-
pose; and he must then, before he sells any of the real estate,
execute another bond to the satisfaction of the probate court
in the penal sum of at least double the value of such real
estate, and the sureties on the general bond given at the time
of the appointment of the guardian will have a right to sup-
pose that the guardian will never be permitted to sell any of
the real estate before he executes and files the special bond re-
quired by § 15.

The judgment of the court below will be reversed, and the
cause remanded for further proceedings.

All the Justices concurring.