THE PEOPLE, for use of John A. Sterling, Admr.

*v.*

PRESTON HUFFMAN *et al.*

*Opinion filed October 16, 1899—Rehearing denied December 13, 1899.*

1. EXECUTORS AND ADMINISTRATORS—*liability of sureties cannot be extended by implication.* Sureties who execute the statutory bond of an executor or administrator do so with reference to existing laws fixing their liabilities and prescribing the duties to be per-formed by executors, and their contract is to be construed strictly, and cannot be extended beyond its terms by implication.

2. SAME—*effect of statutory mention of matter requiring special bond by executor.* Special mention, by statute, of one matter to be covered by a particular bond to be given by an executor, indicates that it was not intended to be covered by a general provision in another bond which would otherwise be applicable.

3. SAME—*section 7 of Administration act of 1881 construed.* The pro-vision of section 7 of the Administration act, as amended in 1881,

(Laws of 1881, p. 1,) that an executor's bond shall be in double the value of the personal estate and that a further bond be given in case of the sale of land either under the will or order of court, precludes liability of sureties on the executor's bond for his failure to faithfully perform his duties upon a sale of real estate.

4. SAME—*an executor selling real estate for re-investment acts as trustee and not as executor.*  A testamentary power to sell real estate, conferred upon an executor for the sole purpose of re-investment, is not the discharge of a duty as executor for which his general bondsmen are liable, but the discharge of a duty as trustee.

5. SAME—*when sureties on general bond are not liable for administration of proceeds of real estate.*  Real estate changed into money by virtue of a power in the will is not personal property, for the faithful administration of which the sureties on the executor's general bond are responsible.

6. SAME—*executor's report not conclusive on sureties if not approved by court.*  The report of an executor showing a certain balance in his hands as of the date of the report is not conclusive on his sureties in an action to enforce their liability on the bond, when the report was not approved by an adjudication of the court.

7. SAME—*executor must give separate bond on selling real estate though land lies outside the State.*  The bond required to be given by section 7 of the Administration act, as amended in 1881, to secure the proceeds of land sold by an executor under the terms of the will or by decree of court, must be given as a separate bond to secure such fund, whether the land lies within or without the State.

8. SAME—*general bondsmen are not liable for acts of executor requiring a special bond.*  The general bondsmen of an executor or administrator are not liable for his acts in discharge of an official duty of a special nature, for the faithful performance of which he is required by law to give a special bond.

9. APPEALS AND ERRORS—*when Supreme Court may examine stipulation of facts on appeal from the Appellate Court.*  The judgment of the Appellate Court containing no finding of facts is not conclusive upon the Supreme Court, where the former remands a cause with specific directions upon a record containing stipulated facts merely, but the Supreme Court will examine the stipulation to see whether the judgment is warranted by the law.

CARTWRIGHT, C. J., and WILKIN and BOGGS, JJ., dissenting.

*Huffman* v. *People, for use, etc.* 78 Ill. App. 345, reversed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of McLean county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This action was brought against the defendants, as sureties upon the bond of Joseph Wilson, executor of the last will and testament of Isaac Wilson. The bond is in strict accordance with the form prescribed in section 7 of chapter 3 of "An act in regard to the administration of estates," approved April 1, 1872, in force July, 1872. The bond was in the penal sum of $8000, the estimated amount of double the value of the personal property. The executor and one of his three co-sureties are dead, and a suit is brought by plaintiff in error, who was appointed administrator *cum testamento annexo*, against the surviving sureties to recover for an alleged breach of that bond.

Joseph Wilson was appointed executor of the following will of Isaac Wilson, deceased:

"*First*—I request and direct that my executor shall sell the land owned by me and described as follows: The north one-half of section 34, town No. 100, north, range 44, west of the fifth principal meridian, in Lyon county, Iowa, and invest the proceeds in land in McLean county, Illinois, to the best of his judgment, for the benefit and use of my wife, Louisa Wilson, during her life and so long as she shall remain a widow, and after her decease or re-marriage the same to be equally divided between the surviving heirs of my body.

"*Second*—I request and direct that my executor shall collect all notes and accounts due or owing to me, of whatever kind or nature, and the amount so collected, together with the money I may leave at my death, amounting to the sum of $4000, and invest the said moneys in lands in McLean county, Illinois, as his best judgment may direct, for the use and benefit of my wife during her life and so long as she shall remain a widow, and after her death or re-marriage the same is to be equally divided between the heirs of my body.

"*Third*—I give and bequeath all the rest, residue and remainder of my personal property, of what nature or kind soever, to my said wife, Louisa Wilson.

"*Fourth*—I hereby appoint Joseph Wilson the sole executor of this will, revoking all former wills by me made.

"In testimony whereof I have hereunto set my hand and seal this 19th day of May, A. D. 1887."

Said will was probated September 28, 1887, and Joseph Wilson qualified as executor of the same, gave the bond sued on October 4, 1887, took the oath required by statute, entered upon the duties of his office, and continued to act until the time of his death, for more than seven years. During that time he filed three reports of his acts and doings as such executor, the last one dated January 12, 1894, and by this report shows that there was in his hands at that time, as such executor, $3938.68. On March 13, 1889, more than seventeen months after his appointment, Wilson filed his inventory showing property estimated at $8627.61, but on which he realized something less than $8000, which, together with rents and interest reported, amounted to $9000.85. In his report he itemized the receipts, but reported all moneys, whether the proceeds of personalty or realty, as a single fund in his hands as executor, and paid out of this fund, regardless of whence it came, all items of expenditures, leaving in his hands as such executor at the date of and as per his last report, January 12, 1894, the sum of $3938.68 aforesaid.

The plaintiff seeks to recover $3938.68 balance, with interest thereon, proceeds of real estate sold October 30, 1890, by the executor under the foregoing provisions of the will. This balance was the entire amount after allowing the executor all credits claimed in each report, including $1498.04 expended in the purchase of real estate in Colfax, Illinois. It does not appear that the expenditure was questioned in any manner in either the county, circuit or Appellate Court.

The case was tried below on a stipulated statement of facts, with all proper counts, pleas and replications considered filed. That stipulation contains the record and reports in full of the probate court. A summary of

such facts shows: (1) the debts are paid; (2) widow's award also paid; (3) the $300 worth of household goods delivered under the third clause of the will; (4) that the personal property, including household goods, amounted to about $3692.28, the Iowa land sold for $4480, and the rentals therefrom collected of $180.82; (5) that the debts paid, the widow's award, $300 worth of personal property, and the sum invested in real estate at Colfax, in McLean county, amounted to about $4509.34; (6) that the executor was appointed and qualified October 25, 1887, and died on September 17, 1894, and his report shows that he did not re-invest the proceeds of the Iowa land, and that he paid out $817.08 more than all the personal property left by the testator; (7) that in the executor's last report he treats the real estate proceeds as a trust fund; (8) that the total received by the executor from all sources was $9000.85, of which $672 was interest upon $4480, the price realized from sale of Iowa lands, with which the executor was required by the county court to charge himself in his last report; (9) that the only investment in real estate made by the executor was the purchase of a home for the testator's widow and children in Colfax, McLean county, Illinois, which investment was made long prior to the sale of the Iowa real estate, in the purchase and improvement of which he paid $1198.04 before anything was realized from the Iowa land, the remaining $300 purchase money of Colfax property being paid by the executor March 5, 1891.

The proceeds of the Iowa real estate ($4480) were not received, as shown by the executor's reports, until October 30, 1890. Before that time the executor had paid out $3730.25. The executor paid out for real estate at Colfax, in McLean county, $1498.04, of which all but $300 was paid before October 30, 1890, when the proceeds of the Iowa real estate were received.

No duty of the executor with reference to the payment of debts, legacies, widow's award, or to the administra-

tion of the personal property of said estate, was left unperformed. The controversy arises over the construction of the law as to the effect of this bond—as to whether the surviving sureties thereon are to be held liable for the proceeds of the real estate situated in the State of Iowa. The plaintiff in error contends that the bond given under the provisions of section 7 of the act above cited makes the sureties thereon liable for the 'proceeds of the real estate so directed to be sold and to be re-invested in real estate in McLean county. The defendants contend that the bond does not cover such real estate directed to be so sold and re-invested.

On the hearing defendants' counsel submitted five propositions to be held by the court as the law of the case. These were to the effect that the bond sued on was given to secure the proper administration of the personal estate of the testator, and did not secure the proceeds of the sale of real estate authorized to be sold by the terms of the will. All of these propositions were refused by the court, to which refusal defendants excepted, and thereupon the court of its own motion prepared and held seven propositions as the law in the case, to the effect that under the bond in this case the defendants, as sureties, were liable not only for any misapplication or misappropriation of funds arising from the maladministration of the personal estate of the intestate, but also for any funds that came into the hands of their principal as such executor, and by him misappropriated; that the law of Iowa, as to the real estate in Iowa in regard to which the principal in the bond in suit was authorized to act under the will, must be held to apply, and that the law of the State of Illinois, in regard to giving further and additional bond in case of sale of real estate, did not apply; that where an executor, by virtue of the power vested in him by the will, is charged with duties that might more properly belong to a trustee, yet when he qualifies as executor and attempts to carry out the trusts created by a

will he will be held to do so in his capacity as executor until he renounces as executor and qualifies as trustee, and for any waste or embezzlement before qualifying as such trustee the sureties on his executor's bond will be liable. To each proposition so held the defendants then and there excepted.

The trial court entered judgment for plaintiff in error in debt for $8000, to be satisfied by the payment of damages assessed at $4230.83. On a writ of error sued out from the Appellate Court a judgment was entered reversing and remanding the judgment of the circuit court of McLean county, with instructions to the latter court to find for the plaintiff in error in debt for $8000, to be satisfied by the payment of damages assessed at $724.13, with lawful interest thereon from January 24, 1894, to the date of finding. A writ of error was sued out from this court to the Appellate Court on that record, and the plaintiff in error assigned as error that the Appellate Court erred in holding the executor's bond did not cover the proceeds of the Iowa land and in reducing the amount of damages. The defendants in error assigned as cross-errors that the Appellate Court erred in finding any sum of money due on said bond.

WELTY & STERLING, for plaintiff in error:

An administrator *de bonis non* may have and maintain all necessary and proper actions against the securities on the bond of his predecessor for any and all of the estate which may have come to the hands of such predecessor and is withheld, or may have been wasted, embezzled or misapplied and no satisfaction made for the same. Hurd's Stat. 1887, chap. 3, sec. 37; *Nevitt* v. *Woodburn,* 160 Ill. 203.

The statute, prior to 1881, provides that the executor shall enter into bond in double the value of the estate. The present statute provides that the executor shall enter into bond in double the value of the personal estate,

and where real estate is sold to pay debts or by the terms of the will, he shall give a further and additional bond in double the value of the real estate, in the same form as the first bond. This is the only change made. It only affects the amount of the bond to be given—not the terms or conditions.

The sureties on the original bond are liable for the waste, mismanagement, etc., of the estate by the executor, whether it be proceeds of personal or real estate, to the amount of the bond. *Evans* v. *Gerkin*, 105 Cal. 311.

Sureties are bound by the report of the executor, and are estopped from denying that he had a balance in his hands, as such executor, according to and at the date of his report. *Doll* v. *People*, 145 Ill. 253; 48 Ill. App. 418; *Chicago* v. *Gage*, 95 Ill. 593; *Cawley* v. *People*, id. 249; *Morley* v. *Metamora*, 78 id. 394; *Wadsworth* v. *Connell*, 104 id. 369; *Longan* v. *Taylor*, 130 id. 412.

SAMPLE & MORRISSEY, for defendants in error:

The bond signed by the defendants secured only personal property, and was given in double the value of such property. Starr & Cur. Stat. chap. 3, sec. 7, p. 195.

The bond, being only in double the amount of the personalty, shows it was not intended to cover real estate. *Jones* v. *Hobson*, 2 Rand. 497.

The laws in force at the time of the making of the contracts form a portion of their essence, and they must be considered as entered into with reference to such laws, and be so construed. *Reynolds* v. *Hall*, 1 Scam. 36.

The statute mandatorily provides when an executor is required by will to sell real estate the court shall require him to give a further and additional bond in double the value of such real estate, the same as when real estate is required to be sold to pay debts. Starr & Cur. Stat. chap. 3, secs. 7, 23.

The liability for sale of real estate rests on such additional bond, where sale was not made to pay debts or

legacies. *Madison County* v. *Johnston*, 51 Iowa, 152; *Bruce* v. *Bruce*, 65 id. 106; *Robinson* v. *Millard*, 133 Mass. 236.

Such additional bond is not subsidiary, but is independent of the bond given to secure the personal estate. *Robinson* v. *Millard*, 133 Mass. 236; *Bruce* v. *Bruce*, 65 Iowa, 106; *Morris* v. *Cooper*, 35 Kan. 156; *Warwick* v. *State*, 5 Ind. 350; *Henderson* v. *Cooper*, 4 Nev. 429; *White* v. *Ditson*, 140 Mass. 351.

The requirement of such additional bond shows the sureties on the personal property bond did not contemplate, and did not agree to be liable for, proceeds of real estate. *Madison County* v. *Johnston*, 51 Iowa, 152; *Bruce* v. *Bruce*, 65 id. 106.

The fact that the additional bond was not given does not affect the question, or create a liability where such liability would not have existed on the first bond if such second bond had been given. *Bruce* v. *Bruce*, 65 Iowa, 106.

Where a separate bond is required to be given by a guardian on the sale of a ward's real estate, it has often been held that the sureties on the general bond are not liable for the proceeds of sale of such real estate. See Iowa cases above cited; *Henderson* v. *Cooper*, 4 Nev. 429; *Warwick* v. *State*, 5 Ind. 350; *Morris* v. *Cooper*, 35 Kan. 156.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Where one is appointed to an office, such as executor, administrator or guardian, as to which certain duties are prescribed by statute and for the performance of which he is required to give a bond with security, it is a general rule that when that officer is further required to discharge official duties which are special in their nature and for the faithful performance of which he is required to give a special bond, in the absence of any declaration in or provision of a statute that the general bondsmen shall be liable for the faithful discharge of the special duty no liability can be held to attach for which they would be

liable on their general bond. (*Board of Supervisors of Milwaukee County* v. *Ehlers*, 45 Wis. 281; *Crumpler* v. *Governor*, 1 Dev. 52; *Governor* v. *Barr*, id. 65; *Governor* v. *Matlock*, id. 214; *Waters* v. *State*, 1 Gill, 302; *Commonwealth* v. *Toms*, 45 Pa. St. 408; *State* v. *Corey*, 16 Ohio St. 17; *People* v. *Moon*, 3 Scam. 123; *State* v. *Johnson*, 55 Mo. 80; *United States* v. *Cheeseman*, 3 Sawyer, 424; *State* v. *Young*, 23 Minn. 551; *Henderson* v. *Coover*, 4 Nev. 429; *Lyman* v. *Conkey*, 1 Metc. 317; *Williams* v. *Morton*, 38 Me. 52.) Under that principle, where a bond is given by a guardian on assuming the duties of his trust, which was designed to secure the faithful appropriation and investment of the personal estate of the ward, including the rents of the real estate, the sureties on such general bond were held not responsible for the misapplication of money received on the sale of real estate, where the statutes required that another bond should be given as security for the safe keeping of the purchase money received on the sale of the real estate, and where such real estate was sold without such bond having been given. *Warwick* v. *State*, 5 Ind. 350; *Williams* v. *Morton*, *supra.*

In *Morris* v. *Cooper*, 35 Kan. 156, it was held with reference to the liability on the general bond of a guardian, that he (the guardian) "simply takes charge of the personal property and the rents and profits of the real estate; and this is all that the bond is intended to cover. If it should be desired that the guardian should sell any portion of the real estate for his ward he must first procure a special order for that purpose; and he must then, before he sells any of the real estate, execute another bond to the satisfaction of the probate court, in the penal sum of at least double the value of such real estate; and the sureties on the general bond given at the time of the appointment of the guardian will have a right to suppose that the guardian will never be permitted to sell any of the real estate before he executes and files the special bond required by section 15."

In *Williams* v. *Morton, supra,* it was held: "It could not have been designed by the legislature that a bond given for the faithful discharge of the duties of guardian, which by his letters of guardianship he is bound to perform, should be the security for the observance of the provisions of a sale of real estate and the proper application of the proceeds, when the sale was under authority of a special license only, and a special bond is required that the duties to be done under that license as the law prescribes shall be faithfully performed. The proceedings under the license, as required by the statute, are not, strictly speaking, guardian duties, but, as matter of convenience, the change of the real estate of the ward into money is to be done by him who has the charge of the former, and who is to see that the latter is properly secured upon interest." To the same effect is *Madison County* v. *Johnston,* 51 Iowa, 152, and *Bunce* v. *Bunce,* 65 id. 106.

The additional bond that is required where a sale of real estate is authorized by will or decree of court is not a subsidiary bond or one additional to the first, but concerns a different subject matter in dealing with the estate of a deceased person, and the two bonds may well co-exist as securities for distinct liabilities. (*Robinson* v. *Millard,* 133 Mass. 236; *White* v. *Ditson,* 140 id. 351; *Bennett* v. *Overing,* 16 Gray, 267.) Where a bond is given for a specific object, general words can be construed only with reference to that specific object. (*Crumpler* v. *Governor, supra.*) Where the condition of a bond has appropriate words to secure the performance of a certain class of duties imposed by law on such officer, even though there be general terms superadded which could include all his official duties, it would not extend the liability of a surety to other duties for which, by law, a separate bond is directed to be given but which direction has not been complied with. *Governor* v. *Matlock, supra.*

By section 7 of the act with reference to the administration of estates it is provided that all executors, unless

the testator shall otherwise direct, shall, before entering upon the discharge of their duties, enter into a bond, with good and sufficient securities, in a sum double the value of the personal estate. By section 6 of the same chapter the form of the oath to be taken by the executor at the time letters testamentary are granted is prescribed, and by that oath the executor swears that he will "well and truly execute the same by paying first the debts and then the legacies mentioned therein, as far as his goods and chattels will thereunto extend." By this legislation it is apparent that the executor is to administer with reference to the personal estate only, and his bond being in double the value of the personal property only, the idea is excluded that the duties of the executor include the sale of real estate under the bond thus required,—and this was expressly held in *Jones* v. *Hobson*, 2 Rand. 483.

The law providing for the discharge of the duties of the executor with reference to the personal estate is necessarily taken notice of by the sureties when they execute the bond, and the bond is executed in connection with the provisions of the statute, and the liability of the sureties is made with reference to the law as it exists at the time of the execution of the instrument and with reference to the duties to be performed by the executor as prescribed by the law so existing. The contract of a surety is to be construed strictly, both in law and equity, and his liability is not to be extended, by implication, beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation is he bound, and no further.

By the provisions of section 7 of chapter 3, as amended by the act of May 30, 1881, after providing for the form of the bond of the executor, as herein before stated, and requiring it to be in double the value of the personal estate, it is then provided that "where it becomes necessary to sell the real estate of any intestate for the payment of debts against his estate, under the provisions of this act,

182—26

or in case real estate is to be sold under the provisions of a will, the court shall require the executor (or administrator) to give further and additional bond, with good and sufficient security to be approved by the court, in a sum double the value of the real estate of the decedent sought to be sold, and payable to the People of the State of Illinois, for the use of the parties interested, in the form above prescribed."

Under this one section of the act the general enactment with reference to the form of the bond to be given by the executor could, in its most comprehensive sense, be held to include what is provided for with reference to the provisions as to the particular bond to be given in the case of sale of real estate either by virtue of the terms of the will or under a decree of court; yet it is a principle of construction that the special mention of one thing to be covered by a particular bond indicates that it was not intended to be covered by a general provision which would otherwise be applicable. As stated by Endlich on the Interpretation of Statutes (sec. 399): "Where there is in the same statute a particular enactment and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." This rule is cited approvedly in *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 148 Ill. 141. The entire section relates to the same subject matter and has in view but one object, and the provision which requires that two bonds are to be taken in the case of a sale of land, either under authority of the will or an order of court, one of which is to secure the proceeds of the sale of real estate and the other to secure proper application of the personal estate, precludes the idea that one is to be taken in strict accordance with the statutory form, which would waive the necessity

of the other and render liable the securities on the first bond for any failure in the discharge of duties of a different character for which the second bond is expressly required to be taken.

It was held by this court in *Hall* v. *Irwin,* 2 Gilm. 176, that after the introduction of conveyance by will executors were frequently appointed by the testator to effect the conveyance, but were not necessarily and by virtue of their office the agents for such purpose; that, so far as they were charged with the alienation of lands, they acted by virtue of the power given in the will,—a common law power,—or as donees of the grant, and not as executors. The rule of the common law was, that executors, as such, have no estate in or power over the real estate of their testator; that their power to sell must be derived either from the will or by virtue of the statute. No statute is shown to exist save as provided for by the statute on administration, and the power of the executor under that statute is only to sell when it becomes necessary to pay debts or legacies, and it is not an executorial power to sell for investment. Where the will provides for a sale by the executor with power to re-invest, and for the sole purpose of re-investment, it is not the discharge of a duty as executor but the discharge of a duty as trustee. (*Gammon* v. *Gammon,* 153 Ill. 41; *White* v. *Ditson, supra.*) In this latter case it is said: "The power to sell real estate, independently of that which may be given by the probate court for the payment of debts and legacies, is a trust power different from that which belongs properly to the executor or administrator." That case involved a suit upon an executor's bond, which, among other conditions, secured "the proceeds of all his real estate that may be sold for the payment of debts and legacies, which shall come to the possession of said executor." The contention there was that the bond secured all the proceeds of the real estate sold by the executor. The court say on that point: "To construe it (the bond)

as binding the sureties to be responsible for a sale of real estate, made for no such purpose but by authority of a trust power given in the will, is to extend their obligation much too far. \* \* \* We understand that the argument by which this responsibility is deemed to exist is, that, the real estate having been lawfully turned into money under the power of the will, the proceeds became of 'the goods, chattels, rights and credits' of the estate, for the faithful administration of which the sureties were bound. If this argument were tenable, it would follow that, when real estate was ordered to be sold to a greater amount in value than was necessary for the payment of debts and legacies, which the probate court is authorized to do when land cannot be divided, the sureties on an administrator's bond in the form here used would be responsible for the surplus. Yet this is certainly not the case. An additional bond has always, in such case, been taken for the protection of this surplus, for the reason that the sureties in the original bond have been held not responsible for it, until the recent change in the administration bond.—*Bennett* v. *Overing,* 16 Gray, 267; *Robinson* v. *Millard, supra.*"

There has been on this subject, it must be conceded, a conflict of authority in the decisions of the several States, not reconcilable by reason of the differences which exist in the form of the bonds considered in the several cases. They were all examined with great care in *Probate Court* v. *Hazzard,* 13 R. I. 3. It was there held that in a suit on an administrator's bond, conditioned to administer all the "goods, chattels, rights and credits" of the deceased, the sureties were not liable for the proceeds of real estate sold by the executor under a power in the will. The words "the proceeds of real estate sold for the payment of debts and legacies," are not found in the Rhode Island bond, but how strictly these have been limited in Massachusetts is shown by the cases already cited. Even if the real estate has been changed into money by virtue of

a power in the will, it is not, in our view, that personal property for the administration of which the sureties became responsible.

Counsel for plaintiff in error rely on *Wadsworth* v. *Connell*, 104 Ill. 369, as establishing the liability of the sureties for all money that may come to the hands of the executor, from whatsoever source they may be derived. The bond in that case was given under section 7 of the chapter on administration, as revised in 1872. The statute at that time provided that all executors should enter into bond, in good and sufficient security, in a sum in double the value of the estate. No distinction was made between the personal and real estate, nor did that statute contain a provision that a bond should be given in case of a sale of real estate under a will providing for such sale. That statute, however, was amended in 1881 and the law enacted as it now stands. That case is distinguishable from the one at bar, and what is said with reference to the liability of the executor in that case has no relation to the question here presented. Under the statute as it now stands, where a will makes the same person executor and trustee, the executor's bond cannot be construed for the faithful performance of the duties belonging to the trustee. A separate bond should be given by the trustee. *Hinds* v. *Hinds*, 85 Ind. 312; Woerner's Law of Administration, sec. 260.

Plaintiff in error contends that the sureties on the executor's bond are bound by his report as such executor, and are estopped from denying that he had a balance in his hands, as such executor, according and at the date of his report. The reports of the executor and the facts agreed upon show that he received from the sale of real estate and the rent on the real estate, and interest on the proceeds, the total sum of $5399.82; that he received as the proceeds of the personal property $3601.03; that he paid out an aggregate of $5858.99. To the balance he adds the excess paid the widow over her award and in-

come from real estate, $796.83, and reports a balance on hand as due from the executor $3938.69. It becomes necessary to determine whether the amount thus reported is conclusive on the sureties on the bond, and whether that sum is the measure of their responsibility.

The record in this case shows that on March 13, 1889, the executor filed an inventory of the property of the value of $8627.61, and on the 13th of March, 1889, he filed his first report, showing items of receipts aggregating $2864.03, and that he had paid out $2839.78. On February 23, 1892, he filed his second report, showing, with the balance on hand at his last report, receipts to the amount of $5489.07, and that he had paid out since the filing of the last report the sum of $1573.96. On January 24, 1894, he filed his third and last report, showing receipts, with the balance on hand from the former report, $4587.11, and credits since the last report of $1445.46. The two last reports included proceeds of the sale of the land, with the interest thereon. It is not shown that either of said reports was approved, or that the court found on the report that the amount in the hands of the executor was as stated by him.

A line of authorities may be found in this State which hold that a public officer who by the statute is required to keep books of account and correctly state the accounts therein, is, with his sureties, chargeable with the amount with which he charges himself on those books, and that he and his sureties are estopped from questioning or denying the correctness of the books showing the amount received or on hand. That line of cases is such as arise on the bond of the county treasurer or on the bond of a school treasurer, and like officers whose books are evidence against the officer of the amount received, which is not to be conclusively determined by any adjudication or finding of a court approving the same or adjudging that such officer is in possession of such sum. Of this

line of cases we cite *Cawley* v. *People*, 95 Ill. 249; *City of Chicago* v. *Gage*, id. 593; *Doll* v. *People*, 145 id. 253.

In *Robinson* v. *Millard, supra*, it was held: "Even if the allowance of a guardian's account conclusively settles that he is chargeable with the whole balance apparently due, it is not conclusive upon the question which class of sureties are responsible for his failure to do with the balance what is duly required of him. This must depend upon the source from which the money thus charged against him was derived. The fact, therefore, that the executors here saw fit to charge themselves in their general account with the balance remaining after the payment of debts, legacies and charges, does not conclude the sureties under the general bond. Where one may rightfully hold a sum of money or other property in either of two capacities, his own election may determine, even as against sureties, in which capacity he thus holds it; but such case is readily distinguishable from the present." To the same effect is *Lyman* v. *Conkey*, 1 Metc. 317, and *Mattoon* v. *Cowing*, 13 Gray, 387. In *Commonwealth* v. *Gilson*, 8 Watts, 214, it was held the sureties on an ordinary administration bond are not liable for the proceeds of the estate of the intestate, though charged in the account of administration by the executor in the orphans' court. In *Clay* v. *Hart*, 7 Dana, 1, it was held the sureties of an executor cannot be made liable for funds which the executor received as agent or trustee for a legatee, though he has charged himself with them in his executorial accounts.

Where a report is made by an administrator or executor, and there has been an adjudication by the court approving that report and ordering payment from the funds in the hands of such administrator, that judgment is evidence that is conclusive on such administrator or executor, as also upon his sureties, by the express provisions of section 115 of chapter 3 of the Revised Statutes. Upon failure to pay over in accordance with such order of the

court the executor or administrator is guilty of a *devastavit,* and suit may be instituted upon the bond of such officer.   Such suit is on the bond and judgment itself, and such judgment, when offered in evidence, showing the approval by the court and order to pay over, is like any other judgment of a court of competent jurisdiction, that cannot be attacked in such collateral action except for fraud.   *Ralston* v. *Wood,* 15 Ill. 159; *Housh* v. *People,* 66 id. 178; *Frank* v. *People,* 147 id. 105.

The approval of the report of the executor or administrator is a judicial act to be done by the court, and when made and entered is binding upon all parties before the court.. (*Dickson* v. *Hitt,* 98 Ill. 300.)   Until a court approves such report or a report of final settlement, the administration remains open for such further order and proceeding as may be necessary to finally settle and distribute the estate, and the court may change the report and add to or deduct from the liability of such executor or administrator, as shown by the report; but until its approval by the adjudication of the court having jurisdiction thereof, the mere report itself is not conclusive upon the parties, but is open for inquiry.   *Frank* v. *People, supra.*

Where the report of an officer, such as an executor or guardian, is presented to the county court for approval, all questions relating to the claim within the jurisdiction of the court and necessarily involved in the inquiry before the court must be regarded as finally and conclusively settled by the adjudication in that proceeding.   It is well settled, however, that judgments or orders of that character are not to be extended, by mere intendment, to matters not necessarily involved in the determination. (*Jessup* v. *Jessup,* 102 Ill. 480.)   In the adjustments of the accounts of guardians, executors and administrators the county court is possessed of equitable powers, and exercises, to a certain extent, equitable jurisdiction.   (*Bond* v. *Lockwood,* 33 Ill. 212; *In re Steele,* 65 id. 322.)   Until a final

settlement, if it appear there be omissions or mistakes in the reports theretofore made, that court may correct such mistakes, as may also be done by any court to which an appeal may be taken. (*Bruce* v. *Doolittle*, 81 Ill. 103; *Bennett* v. *Hanifin*, 87 id. 31.) The report of the executor thus presented, upon which there has been no adjudication by the county court, cannot be held conclusive on the sureties in this case.

It is insisted by the plaintiff in error that the lands directed to be sold by the provisions of the will were situated in the State of Iowa, and hence the provisions of our statute do not apply and have relation only to lands in the State of Illinois. This would incorporate into the statute, which requires a general bond of the executor, a provision which would create a liability on the general bond of the executor in the case of a sale of lands lying outside of the State, not authorized by its terms, and would except from another part of the same section a requirement with reference to the sale of lands which requires a bond to be given as a separate and independent bond to secure the proper application of money derived from the sale of lands. Neither the exception nor the incorporation of a liability is authorized by the terms of the statute, and we hold, therefore, that the bond required to be given to secure the proceeds of the sale of land by an executor, which is authorized to be sold by the terms of the will or by the decree of court, must be given as a separate and independent bond to secure such fund, regardless of the fact whether the land lies within or outside of the State of Illinois.

The question is presented by the briefs of counsel whether a sale of real estate under the provisions of a will or under a decree of court, without first giving a bond as provided by the last clause of section 7, would be null and void. On this question there is conflict of authority, but under the facts appearing in this record it is not necessary to determine that question.

It appears from the evidence in the record that the sum of $1498.04 was expended in the purchase of real estate in Colfax, Illinois, and the correctness of that expenditure does not appear to have been questioned in either the county, circuit or Appellate Court. But at the time of its expenditure the payment for that real estate was largely made from funds in the hands of the executor as proceeds from the personal estate. There is no finding in the judgment of the Appellate Court. The facts are stipulated and there is no dispute as to the same. The question presented on the record is whether such facts constitute a defense. By this stipulation of facts this court will pass upon them, and determine from them, as a matter of law, what is shown thereby. (*Launtz* v. *People*, 113 Ill. 137; *Sweetser* v. *Matson*, 153 id. 568.) The Appellate Court having remanded the cause with specific directions upon a record containing stipulated facts merely, its finding and judgment are not conclusive on this court, and this court will examine the stipulation to see whether there was a proper application of rules of law that warranted the judgment. *Chicago and Alton Railroad Co.* v. *Pennell*, 110 Ill. 435; *Hogan* v. *City of Chicago*, 168 id. 551.

From the entire facts in the record we hold that there was no liability under this bond, and hence the court erred in refusing the propositions asked by the defendants in error and in holding those which were held of its own motion.

The judgment of the Appellate Court for the Third District and the judgment of the circuit court of McLean county are each reversed and the cause remanded.

*Reversed and remanded.*

CARTWRIGHT, C. J., and WILKIN and BOGGS, JJ., dissenting.