People of the State of Illinois, for the Use of William L. Miller, as Administrator With Will Annexed of the Estate of Margaret H. Townley, Plaintiff-Appellee, Plaintiff-Cross-Appellant, v. Joseph Myer, Defendant-Cross-Appellee, and the National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a Pennsylvania Corporation, Defendant-Appellant.

### Gen. No. 11,846.

Third District.

February 17, 1964.

Burrell & Holtan, of Freeport (David M. Burrell, of counsel), for appellant.

Mathis, Sloan & Littler, of Peoria (J. Michael Mathis, of counsel), for appellee and cross-appellant, and Trimble and Trimble, of Princeton (Harvey D. Trimble, of counsel), for cross-appellee.

ROETH, J.

This case is before this court upon a stipulation of facts. From that stipulation the following appears:

On October 19, 1955, a petition was filed in the County Court of Bureau County, Illinois, by L. D. Spaulding, Jr., alleging that Margaret Townley was incompetent, that she owned personal estate of the value of $15,000, and that she had gross annual income from real estate of $1,200; said petition prayed that Zelda Neiman be appointed as conservator for said Margaret Townley. Thereafter on October 25, 1955, pursuant to said petition, Margaret Townley was adjudged incompetent and Zelda Neiman was appointed as conservator for said Margaret Townley, Incompetent, upon said Zelda Neiman entering into bond in the penal sum of $30,000 with two sureties or in the penal sum of $22,500 with one corporate surety. Zelda Neiman filed in said court her bond in the penal sum of $30,000, with Joseph Myer, defendant herein, and L. D. Spaulding, Jr., as sureties thereon, which bond was approved by the court. This bond provided as follows:

> "Know all men by these presents, That we Zelda Neiman, as Principal and Joseph Myer and L. D. Spaulding, Jr., as Sureties, all of the County of Bureau and State of Illinois, are bound to the People of the State of Illinois in the penal sum of Thirty Thousand and no/100 ($30,000.00)—Dollars, lawful money of the United States, for payment of which we and each of us bind ourselves,

and our heirs, executors, and administrators, jointly and severally by these presents.

"THE CONDITION OF THIS OBLIGATION IS SUCH That if the said Zelda Neiman, Conservator of the estate and person of Margaret Townley, incompetent, faithfully discharges the duties of her office according to law and does all acts which at any time may be required of her by law or a court, then this obligation is void, otherwise in full force.

"Witness our hands and seals this 17th day of November, 1955.

> Zelda Neiman (Seal)
> Joseph Myer (Seal)
> L. D. Spaulding, Jr."

Margaret Townley was the owner of an undivided one-half interest in certain real estate in Bureau County. On October 15, 1959, Zelda Neiman, as Conservator for said incompetent, filed a complaint for partition of said estate in the Circuit Court of Bureau County, Illinois; that pursuant to said complaint a decree for partition was entered by the court on December 22, 1959, and said premises were subsequently sold by the Master in Chancery on January 22, 1960.

On March 25, 1960, an order was entered by the County Court of Bureau County, Illinois, in the Conservatorship of Margaret Townley, Incompetent, finding that said complaint for partition had been theretofore filed by said Conservator, that said premises had been sold by the Master in Chancery, that distribution was yet to be made, that the share of said Margaret Townley to come into the hands of said Conservator was approximately $30,000, and that said Conservator had submitted her Special Bond for Sale of Real Estate in the penal sum of $45,000 with the National Union Fire Insurance Company of Pittsburgh, Penn-

sylvania, defendant herein, as surety thereon; that it was thereupon ordered and adjudged by the court that the acts of said Conservator in filing said complaint in partition be approved, that the Special Bond for Sale of Real Estate be approved, and that said Conservator be authorized and directed to collect from the Master in Chancery the proceeds from the sale of said premises due to Margaret Townley, Incompetent. This Special Bond for the Sale of Real Estate was secured from a duly authorized agent of The National Union Fire Insurance Company of Pittsburgh on March 23, 1960, and at the time of the execution of it by the agent the company had no knowledge, actual or implied, of the prior partition proceedings. This Special Bond for the Sale of Real Estate provided as follows:

"KNOW ALL MEN BY THESE PRESENTS That we Zelda Neiman, as Principal, of the County of Bureau and State of Illinois, and The National Union Fire Insurance Company, of Pittsburgh, Pennsylvania, a Corporation of the State of Pennsylvania, as Surety, are bound to the People of the State of Illinois in the penal sum of Forty Five Thousand and no/100 ($45,000.00) Dollars lawful money of the United States, for payment of which we and each of us bind ourselves and our heirs, executors and administrators, jointly and severally, by these presents.

"WHEREAS, Zelda Neiman, as Conservator of the Estate of Margaret Townley, Incompetent, is about to sell real estate,

"NOW, THEREFORE, the condition of this obligation is such that if the said Zelda Neiman, as Conservator, shall dispose of the proceeds of the said sale in the manner required by law, then this obligation is void; otherwise it remains in full force.

"Witness our hands and seals this 23rd day of March, 1960.

Zelda Neiman, as Principal (Seal)

National Union Fire Insurance Company of Pittsburgh

By Harold E. Parr,
Attorney-in-fact (Seal)

Countersigned by:
Harold E. Parr Agency
by Harold E. Parr (Agent)
National Union Fire Insurance Co. of Pittsburgh, Pa."

There came into the hands of Zelda Neiman as Conservator between November 18, 1955, and April 5, 1960, a total sum of $31,315.07 of which $1,200 was a partial distribution by the Master of the proceeds of the partition sale. From this amount she disbursed $29,935.46 leaving a balance on hand of $1,379.61. Her report showing these receipts and disbursements was approved on May 3, 1960, and on that date fees were allowed to her in the amount of $1,500 and to her attorney in the amount of $500. Subsequently the conservator received the balance of the sale price in the partition suit for the ward's interest and on March 13, 1961, she reported to the County Court receipts in the total sum of $28,125.91 consisting of the prior balance on hand, $26,398.30 received from the partition sale and $380 in other income. She reported disbursements of $5,871.10 leaving a balance of $22,254.81 of which $22,205 was represented by a note of L. D. Spaulding, Jr. By appropriate proceedings in the County Court the loan of funds to L. D. Spaulding, Jr., was found to be unauthorized and the conservator was surcharged with the amount thereof with interest and directed to pay the sum into court within a short

date fixed. Upon failure to comply with this order Zelda Neiman was removed as conservator and a new conservator was appointed.

Margaret H. Townley died and on November 16, 1961, the plaintiff was appointed administrator with the will annexed of her estate. The money found to be due from Zelda Neiman, never having been paid to either her successor or the administrator, the latter instituted this suit against the surety on the general bond of Zelda Neiman as conservator and the surety on the Special Bond to Sell Real Estate of Margaret Townley. The complaint is in two counts, the first being against the surety on the general bond and the second against the surety on the special bond for the Sale of Real Estate. The trial court absolved the surety on the general bond from all liability and held the surety on the Special Bond for the Sale of Real Estate liable for the defalcation of Zelda Neiman. The surety on the special bond has appealed from the judgment against it and the plaintiff has cross-appealed from the judgment in favor of the surety on the general bond. By agreement counsel for all parties have spelled out the issues of law for determination by this court as follows:

1. Does the obligation of the Bond entered into by defendant, Joseph Myer, as surety, extend to cover the disposition of proceeds from the sale of real estate which are a part of an estate of an Incompetent?

2. Does the obligation of the Bond entered into by The National Union Fire Insurance Company of Pittsburgh, Pennsylvania, extend to cover proceeds from the sale of real estate by a Master in Chancery pursuant to a Decree entered in a partition suit filed by the Conservator of an Incompetent when, at the time of entering into the bond, the defendant, National Union Fire Ins. Co., had no notice, actual or implied, of the partition proceeding nor did it have knowledge

of the fact that the property had been sold by the Master in Chancery prior to the execution of the bond?

■ We have no difficulty in answering the second issue as posed in the affirmative. Aside from the stipulation, the record before us discloses that from the time of the appointment of Zelda Neiman as conservator, the cost of maintaining and caring for her ward exceeded the income from the corpus of the personalty and real estate. At the time the partition suit was filed, the conservator had almost exhausted all of the corpus of the personalty during the prior five-year period in caring for her ward. There remained only the undivided interest in the real estate as a source of funds for future maintenance. This she was authorized to sell under the provisions of Sec 224 of the Probate Act. Since the interest of the ward was an undivided interest, it is readily understandable that a partition sale would be more feasible and advantageous to the ward than the sale of the undivided interest under the procedure set forth in the Probate Act. Furthermore in the order of the County Court of March 25, 1960, approving the action of the conservator in commencing the partition suit, there is a finding that the real estate, except for a portion is unimproved and unproductive, "and that the income therefrom is insufficient to pay the costs and expenses of maintaining and keeping said Margaret Townley."

Counsel for the appellant contend that the obligation of a surety cannot be extended by implication or construction. With this general statement we have no quarrel. However, the obligation of the appellant under its bond is clear. It assures the disposition of proceeds of the sale of real estate by the conservator in the manner required by law. This has not been done. But, it is contended, that because of the recital in the bond, to wit, "Whereas, Zelda Neiman, as Conservator of the Estate of Margaret Townley, Incompe-

tent, is about to sell real estate," the bond is ineffectual since a sale had already been made. We attach no particular significance to this recital, particularly in view of the fact that the action of the conservator was approved after the date of the execution of the bond. Nor is there any merit in counsel's contention that since the sale was made by the person of the Master in Chancery rather than by the person of the conservator the bond is ineffectual. In the final analysis the purpose of a sale was to provide *money* for maintenance, the disposition of which, according to law, the surety obligated itself to protect.

One further matter deserves mention. Appellant's bond was executed on March 23, 1960. Although it had no knowledge on that date as to prior proceedings, these prior proceedings both in the Circuit Court and County Court were open to inspection by it after that date. Had there been any merit to the contentions now advanced to avoid responsibility on its bond, it had ample opportunity to discover the facts and to seek release from its obligation under the provisions of Sec 158 of the Probate Act.

The first issue posed presents a more serious question. As to this issue cross-appellee contends that a surety on a general bond of a conservator is responsible only for the "faithful administration of personal property of the estate and not for the faithful administration of proceeds derived from subsequent sales of real estate, for which a special bond is required by law." We have quoted the above verbatim from counsel's brief because the choice of words used is significantly different from that used in Sec 155 of the Probate Act which uses the words, "the personal estate likely to come into his hands as proceeds of the sale."

At the outset it should be noted that persons non compos mentis and infants are favored persons

113

in the eyes of the law. As early observed in Wann v. People for Use of Birk, 57 Ill 202:

> "These helpless members of society are deprived of their natural protectors, and unless their property is hedged round by stringent legislation, and guarded vigilantly by the courts, it will too often become the easy prey of unprincipled avarice."

Counsel for cross-appellee Joseph Myer relies primarily on People for Use of Sterling v. Huffman, 182 Ill 390, 55 NE 981, decided by a four-to-three court in 1899, to sustain their position. This case involved a general bond given by an executor of a will. The provisions of the Administration Act of 1872 in force at the time this controversy arose, upon which the decision hinges, are to be found in the Historical Note to Sec 148 of the Probate Act in Smith-Hurd Illinois Annotated Statutes. In this case, by the provisions of the will the executor was directed to sell certain land owned by the testator in Iowa and reinvest the proceeds in Illinois land. The executor sold the land in Iowa. He did not invest the proceeds in Illinois land but misappropriated them. Prior to the sale of the Iowa land he had fully performed his duties in the administration of personal property by payment of debts, legacies and widow's award. The controversy involved the question of whether or not the sureties on the general bond were liable for the misapplication of the proceeds of sale of the Iowa land.

There are a number of quotations from early foreign cases in the foregoing case from which cross-appellee seeks to gain comfort. It is doubtful whether these citations and quotations were ultimately necessary for a decision of the case. Basically the opinion holds that where a will provides for a sale of real estate by the executor, with power to reinvest, and for the sole

114

purpose of reinvestment, the exercise of the power is not a discharge of a duty as executor but the discharge of a duty in a separate capacity, i. e., trustee and that under the statutory provisions as they then stood (Administration Act of 1872, supra) the executor's bond could not be construed for faithful performance of his duties as trustee, but a separate bond should have been given. It is significant to note that James on Illinois Probate Law and Practice, Vol 4, Sec 155.2, page 210, cites the foregoing case as authority for the text to the effect that the general bond does not cover the proceeds of land sold, but adds in the note (65)

"Because of the change in the condition of the general bond it may be the rule in the text no longer prevails."

The Probate Act enacted by the legislature in 1939 was a comprehensive revision and codification of laws found in various chapters of the Revised Statutes. This act applies to the issues involved in this case. The general bond in question given under the Probate Act of 1939 is conditioned for faithful performance of all duties of the conservator's office and the doing of all acts required of her by law or a court. This condition is broad and all inclusive. The Probate Act in various sections thereof prescribes her duties. Thus by Sec 122 she is charged with the duty of caring for, managing and investing the ward's estate to provide support and maintenance for the ward, and to use the corpus of the estate for this purpose if necessary. (Note that the all inclusive words "estate" and "corpus of estate" are used without undertaking to differentiate between real and personal property.) By Sections 171 and 172 she is charged with the duty of inventorying all real and personal estate of the ward. By Sec 309 she is required to account. By Sec 224 she is authorized to sell the ward's real estate when neces-

115

sary for support of the ward or payment of debts or when expedient for reinvestment and it would seem to follow that a duty is created if the proper circumstances arise. And as heretofore noted Sec 155 treats the proceeds arising from such a sale as personal estate. Certainly they are monies which come to the conservator by virtue of her office as guardian and belong to the ward.

It thus appears that a conservator's duty to sell the ward's real estate, when the statutory conditions arise and to account for the proceeds of sale are general duties of the conservator. In executing the general bond, the surety is bound to take cognizance of those duties. By the general bond executed he has assured performance of those duties and it is no answer by him that some additional surety also assured performance of a limited part of those duties of the conservator. This view is fortified by the provisions of Sec 317 of the Probate Act which provides in substance that a failure to pay *any money or deliver any property* to the person entitled thereto is a devastavit authorizing an action on the *conservator's bond,* i. e., the conservator's general bond.

It is noteworthy that Sec 155 of the Probate Act is entitled "*Additional* Bond for Proceeds of Sale." The legislature has thus seen fit to characterize a conservator's bond for the sale of real estate. We are of the opinion that such a bond does not take the place of the conservator's general bond but is additional and cumulative security given for the benefit of the ward. Had this not been the intent of the legislature when it adopted the Probate Act of 1939 it would have been very easy to say that the sureties on a general conservator's bond should not be liable for the proceeds of the sale of the ward's real estate.

The trial court was in error in finding the issues in favor of defendant Joseph Myer and entering judg-

116

ment in his favor and was correct in finding the issues in favor of plaintiff and against defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a Pennsylvania Corp. There is no dispute in the amount due. It is $22,809.17. Both defendants are liable jointly and severally for this single amount. Accordingly, in lieu of the judgment heretofore entered by the Circuit Court of Bureau County, judgment will be entered in this court for the plaintiff and against both defendants for this amount and costs, together with interest at 5% from July 9, 1963.

Reversed in part and affirmed in part. Judgment here.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.